# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

WARNER BROS. ENTERTAINMENT INC.;
TWENTIETH CENTURY FOX FILM
CORPORATION; COLUMBIA PICTURES
INDUSTRIES, INC.; UNIVERSAL CITY STUDIOS
LLC; UNIVERSAL STUDIOS HOME
ENTERTAINMENT LLC; DISNEY ENTERPRISES,
INC.; PARAMOUNT PICTURES CORPORATION;
and VIACOM INTERNATIONAL, INC.,

     *Plaintiffs*,

     v.

PHAT BUI and DOES 1-10, D/B/A PUBFILM.COM,
PUBFILMNO1.COM, PUBFILMHD.COM,
PIDTV.COM, TOP100FILM.COM, and
IDMCA.NET,

     *Defendants*.

CIVIL ACTION NO. _____

**[FILED UNDER SEAL]**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.      THE PARTIES ....................................................................................................... 3

        A.      Plaintiffs ................................................................................................... 3

        B.      Defendants ................................................................................................ 4

II.     THE PUBFILM WEBSITES ................................................................................. 5

III.    DEFENDANTS' EFFORTS TO EVADE DETECTION AND
        ENFORCEMENT ................................................................................................ 11

ARGUMENT ................................................................................................................... 14

I.      THIS COURT SHOULD ISSUE AN *EX PARTE* TEMPORARY
        RESTRAINING ORDER AND DOMAIN SEIZURE ORDER. ........................... 14

        A.      This Court Has The Authority To Issue Temporary Injunctive
                Relief ...................................................................................................... 14

        B.      This Court Has The Authority To Issue A Seizure Order And
                Injunctive Relief *Ex Parte.* ..................................................................... 15

        C.      *Ex Parte* Relief Is Essential In This Case. .............................................. 18

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
        CLAIMS. .............................................................................................................. 20

        A.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims
                For Direct Copyright Infringement ........................................................ 20

        B.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims
                For Secondary Copyright Infringement .................................................. 22

                1.      Defendants Are Vicariously Liable For Copyright
                        Infringement ................................................................................ 22

                2.      Defendants Are Liable For Inducement Of Copyright
                        Infringement ................................................................................ 23

                3.      Defendants Are Liable For Contributory Copyright
                        Infringement ................................................................................ 23

        C.      Plaintiffs Are Likely To Succeed On The Merits Of Their
                Trademark Infringement Claims .............................................................. 24

III.   INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE
       HARM. ...............................................................................................................26

       A.   Defendants' Copyright Infringement Will Cause Irreparable
            Harm. ......................................................................................................26

       B.   Defendants' Lanham Act Violations Will Cause Irreparable
            Harm. ......................................................................................................29

IV.    THE BALANCE OF THE HARDSHIPS STRONGLY FAVORS
       PLAINTIFFS. .....................................................................................................30

V.     THE RELIEF REQUESTED WILL FURTHER THE PUBLIC INTEREST...........31

VI.    DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION. .....................31

       A.   Defendants Are Subject To This Court's Personal Jurisdiction
            Under New York's Long Arm Statute. .........................................................31

       B.   The Exercise Of Jurisdiction Over Defendants Comports With
            The Requirements Of Due Process. ..............................................................34

VII.   SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE.............36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A & M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...........................................................................21

*ABS-CBN Int'l v. Freepinoychannel.com*,
  No. 15-61002-civ-Dimitrouleas/Snow, 2015 WL 11069997 (S.D. Fla. May 15,
  2015) ...............................................................................................................17, 19

*Adidas AG v. Addidas2013online.com*,
  No. 13-24398-civ, 2013 WL 6667043 (S.D. Fla. Dec. 17, 2013).........................19

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
  No. 14-cv-1112 (VSB), slip op. (S.D.N.Y. Mar. 4, 2014) (Dkt. No. 21) ...............14

*Am. Broadcasting Cos. v. Aereo, Inc.*,
  134 S. Ct. 2498 (2014)........................................................................................21

*Am. Can Co. v. Manusukhani*,
  742 F.2d 314 (7th Cir. 1984) ..............................................................................16

*Arista Records LLC v. Chavez*,
  No. 1:16-cv-00981-AJN, slip op. (S.D.N.Y. Feb. 10, 2016) (Dkt. No. 28).............38

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)............................................................................20, 23

*Arista Records LLC v. Greubel*,
  453 F. Supp. 2d 961 (N.D. Tex. 2006) .................................................................21

*Arista Records LLC v. Lime Grp. LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011)..............................................................22, 23

*Arista Records, LLC v. Tkach*,
  122 F. Supp. 3d 32, 33-34 (S.D.N.Y. 2015) ....................................................16, 19

*Arista Records LLC v. Tkach*,
  No. 15-cv-3701-AJN (S.D.N.Y. May 13, 2015) (Dkt. No. 18) ..............................14

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)............................................................21, 22, 23

*Arthur Metzler & Assocs. Consulting Eng'rs, P.C. v. Grp. Goetz Architects, P.C.*,
  No. 01 Civ. 7253 (DC), 2002 WL 764745 (S.D.N.Y. Apr. 29, 2009)...................35

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002)................................................................................35

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..............................................................32

*Briggs & Stratton Corp. v. Chongquing Rato Power Co.*,
    No. 13-cv-316 (LEK/ATB), 2013 WL 3972391 (N.D.N.Y. July 23, 2013)....................15, 31

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................35

*Capitol Records, LLC v. Escape Media Grp.*,
    No. 12-CV-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)....................21, 22, 23

*Capitol Records, LLC v. ReDigi Inc.*,
    934 F. Supp. 2d 640 (S.D.N.Y. 2013)....................................................21

*Capitol Records, LLC v. VideoEgg, Inc.*,
    611 F. Supp. 2d 349 (S.D.N.Y. 2009)....................................................34

*Century Home Entm't, Inc. v. Laser Beat, Inc.*,
    859 F. Supp. 636 (E.D.N.Y. 1994) .......................................................16

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
    90 F. Supp. 3d 97 (S.D.N.Y. 2015)......................................................34

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
    No. CV 15-01869 MMM, 2015 WL 3649187 (C.D. Cal. June 11, 2015)........................27

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..............................................................31

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
    696 F.3d 206 (2d Cir. 2012)..............................................................15

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)....................................................33

*CJ Prods. LLC v. Snuggly Plushez LLC*,
    809 F. Supp. 2d 127 (E.D.N.Y. 2011) ..............................................14, 30

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ...........................................................21

*Columbia Pictures Television v. Krypton Broad. Of Birmingham, Inc.*,
    106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds by Feltner v. Columbia Pictures Television, Inc.*, 532 U.S. 340 (1998)........................................35

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
    No. 08 Civ. 7497 (KBF), 2014 WL 1883474 (S.D.N.Y. May 9, 2014) ....................26, 28, 29

*Corning Glass Works v. Jeanette Glass Co.*,
    308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970) ..............................30

*Datatech Enters., LLC v. FF Magnat Ltd*,
    No. 12-cv-4500 (CRB), slip op. (N.D. Cal. Aug. 28, 2012) (Dkt. No. 9) ..............................17

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
    806 F.2d 392 (2d Cir. 1986)..............................................................................................25

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ..........................................................................................22

*F.T.C. v. PCCare247 Inc.*,
    No. 12 Civ. 7189(PAE), 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013) ....................................37

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
    696 F. Supp. 2d 368 (S.D.N.Y. 2010)................................................................................25

*First Tech. Safety Sys., Inc. v. Depinet*,
    11 F.3d 641 (6th Cir. 1993) ..............................................................................................18

*Fisher v. Petr Konchalovsky Found.*,
    No. 15-cv-9831(AJN), 2016 WL 1047394 (S.D.N.Y. Mar. 10, 2016)....................................38

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971)............................................................................................24

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)..............................................................................................31

*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70*,
    415 U.S. 423 (1974)..........................................................................................................15

*Hydentra Hlp Int. Ltd. v. Porn69.org*,
    No. CV15-00451-PHX DGC, 2015 WL 8064770 (D. Ariz. Dec. 7, 2015)......................37, 38

*In re Vuitton et Fils S.A.*,
    606 F.2d 1 (2d Cir. 1979) ............................................................................................14, 16

*Ingraham v. Carroll*,
    90 N.Y.2d 592 (1997) ......................................................................................................34

*Kelly v. Evolution Mkts., Inc.*,
    626 F. Supp. 2d 364 (S.D.N.Y. 2009)................................................................................15

*Kreutter v McFadden Oil Corp.*,
    71 N.Y.2d 460 (1988) ......................................................................................................32

*Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*,
    295 F.R.D. 259 (S.D. Oh. 2013) ......................................................................................37

*Liberty Media Holdings, LLC v. FF Magnat Ltd.*,
No. 12-cv-1057 (GMN-RJJ), slip op. (D. Nev. June 21, 2012) (Dkt. No. 11) ...................16

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
378 F. Supp. 2d 448 (S.D.N.Y. 2005)...................................................................................25

*M. Shanken Commc'ns, Inc. v. Cigar500.com*,
No. 07 Civ 7371 (JGK), 2008 WL 2696168 (S.D.N.Y. July 7, 2008) ...............................36

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
265 F.R.D. 106 (S.D.N.Y. 2010) ........................................................................................37

*Marks Org., Inc. v. Joles*,
784 F. Supp. 2d 322 (S.D.N.Y. 2011)............................................................................14, 29

*Mason Tenders Dist. Council Pension Fund v. Messera*,
No. 95 Civ. 9341, 1997 WL 223077 (S.D.N.Y. May 1, 1997)............................................14

*McGraw-Hill Cos. v. Ingenium Techs. Corp.*,
375 F. Supp. 2d 252 (S.D.N.Y. 2005)..................................................................................33

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...............................................................................27

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)........................................................................................................22, 27

*Microsoft Corp. v. Does 1-8*,
No. 1:14-cv-811 (LOG), slip op. (E.D. Va. June 27, 2014) (Dkt. No. 16)...........................18

*Microsoft Corp. v. Does 1-8*,
No. 13-CV-1014 (SS), slip op. (W.D. Tex. Nov. 25, 2013) (Dkt. No. 17)...........................19

*Mon Cheri Bridals, LLC v. P'ships*,
No. 3:15-cv-00021 (FDW-DCK), slip op. (W.D.N.C. June 4, 2015)
(Dkt. No. 12)........................................................................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)............................................................................................................38

*N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*,
No. 10-civ-1630 (AKH), slip op. (S.D.N.Y. Mar. 2, 2010) (Dkt. No. 15) ......................16, 38

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010)........................................................................29, 30, 31

*NFL v. Cheng*,
No. 11-cv-344 (WHP), slip op. (S.D.N.Y. Jan. 19, 2011) (Dkt. No. 7) ..........................18, 38

*NFL v. Primetime 24 Joint Venture*,
  131 F. Supp. 2d 458 (S.D.N.Y. 2001)..................................................................28

*Nguyen v. Trojan Capital Invs., LLC*,
  No. SACV 14-1983-DOC, 2015 WL 268919 (C.D. Cal. Jan. 16, 2015)................................16

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*,
  816 F.2d 68 (2d Cir. 1987)..............................................................................25

*Otokoyama Co. v. Wine of Japan Import, Inc.*,
  175 F.3d 266 (2d Cir. 1999)............................................................................24

*PDK Labs, Inc. v. Proactive Labs, Inc.*,
  325 F. Supp. 2d 176 (E.D.N.Y. 2004) .................................................................33

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  16 N.Y.3d 295 (2011) ...............................................................................33, 34

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ......................................................................21, 24

*Phillip Morris USA Inc. v. Veles Ltd.*,
  No. 06 CV 2988 (GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007)..................................38

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
  970 F.2d 552 (9th Cir. 1992) ..........................................................................16

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)...........................................................................29

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ....................................................................37, 38

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992)...........................................................................20

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010)........................................................................15, 28

*Savage Universal Corp. v. Grazier Constr., Inc.*,
  No. 04 Civ. 1089 (GEL), 2004 WL 1824102 (S.D.N.Y. 2004)........................................33

*Scarves by Vera, Inc. v. Todo Imports Ltd.*,
  544 F.2d 1167 (2d Cir. 1976)..........................................................................31

*SEC v. Citigroup Glob. Mkts. Inc.*,
  673 F.3d 158 (2d Cir. 2012)........................................................................15, 31

*Shell Oil Co. v. Commercial Petroleum, Inc.*,
  928 F.2d 104 (4th Cir. 1991) .........................................................................25

*Shutterfly, Inc. v. ForeverArts, Inc.*,
    No. CR 12-3671 (ST), 2012 WL 2911887 (N.D. Cal. July 13, 2012)....................................17

*Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*,
    954 F. Supp. 2d 145 (E.D.N.Y. 2013) ...................................................................................29

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999).....................................................................................................28

*Tiffany (NJ), LLC v. Liu Dongping*,
    No. 10-cv-61214 (PAS), slip op. (S.D. Fla. July 20, 2010) (Dkt. No. 10) .............................18

*Tishman v. The Associated Press*,
    No. 05 Civ. 4278 (GEL), 2006 WL 288369 (S.D.N.Y. Feb. 6, 2006)....................................38

*TracFone Wireless, Inc. v. Bitton*,
    278 F.R.D. 687 (S.D. Fla. 2012).......................................................................................37, 38

*True Religion Apparel, Inc. v. Xiaokang Lei*,
    No. 11-cv-8242 (HB), slip op. (S.D.N.Y. Nov. 17, 2011) (Dkt. No. 7) ...............14, 17, 18, 38

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013)......................29

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*,
    No. 03 Civ. 8909 (RJH), 2003 WL 22889738 (S.D.N.Y. Dec. 8, 2003)................................16

*UMG Recording, Inc. v. Escape Media Grp., Inc.*,
    No. 11 Civ. 8407, 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014)....................................20, 21

*Van Praagh v. Gratton*,
    993 F. Supp. 2d 293 (E.D.N.Y. 2014) ...................................................................................26

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    275 F. Supp. 2d 543 (D.N.J. 2003) ........................................................................................25

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013)................................28, 30

**FEDERAL STATUTES**

15 U.S.C. § 1065....................................................................................................................4, 14, 25

15 U.S.C. § 1114(1)........................................................................................................................24

15 U.S.C. § 1116(a) ..............................................................................................................1, 3, 14

17 U.S.C. § 106................................................................................................................................3

17 U.S.C. § 106(1)....................................................................................................................20, 21

17 U.S.C. § 106(3) ....................................................................................................20, 21

17 U.S.C. § 106(4) ....................................................................................................20, 21

17 U.S.C. § 106(5) ....................................................................................................20, 21

17 U.S.C. § 502 ...............................................................................................................1

17 U.S.C. § 502(a) .........................................................................................................14

28 U.S.C. § 1651(a) .......................................................................................................14

**STATE STATUTES**

N.Y. C.P.L.R. § 302 .......................................................................................................31

N.Y. C.P.L.R. § 302(a)(1) ..............................................................................................32

N.Y. C.P.L.R. § 302(a)(3) ..............................................................................................32

N.Y. C.P.L.R. § 302(a)(3)(ii) ....................................................................................32, 33

**FEDERAL AND LOCAL RULES**

Fed. R. Civ. P. 4(f)(3) ...............................................................................................36, 37

Fed. R. Civ. P. 65 ......................................................................................................1, 14

Fed. R. Civ. P. 65(b) ......................................................................................................16

Fed. R. Civ. P. 65(b)(1) .................................................................................................15

Fed. R. Civ. P. 65(d)(2) .................................................................................................14

S.D.N.Y. Local Rule 6.1(d) ......................................................................................15, 16

**OTHER AUTHORITIES**

Status Table, Declarations and Notifications, Vietman, Convention of 15
    November 1965 on the Service Abroad of Judicial and Extrajudicial
    Documents in Civil or Commercial Matters,
    https://www.hcch.net/en/instruments/conventions/status-
    table/notifications/?csid=1337&disp=resdn (last visited Jan. 26, 2017) ................37

Pursuant to Federal Rule of Civil Procedure 65, 17 U.S.C. § 502 and 15 U.S.C. § 1116(a), Plaintiffs Warner Bros. Entertainment Inc., Twentieth Century Fox Film Corporation, Columbia Pictures Industries, Inc., Universal City Studios LLC, Universal Studios Home Entertainment LLC, Disney Enterprises, Inc., Paramount Pictures Corporation, and Viacom International, Inc. (collectively, "Plaintiffs") hereby apply, on an *ex parte* basis, for entry of a temporary restraining order ("TRO") requiring Defendants to immediately cease and desist all use of Plaintiffs' copyrighted works and trademarks; directing the domain name registry and registrars for the PubFilm Domain Names (as defined below), including without limitation Verisign, Inc., Enom, Inc., and GoDaddy.com, LLC, to disable the PubFilm Domain Names; and allowing Plaintiffs to serve process on Defendants by electronic means.   In support thereof, Plaintiffs submit the following memorandum of law.

## PRELIMINARY STATEMENT

Defendants own, operate and promote a ring of at least six interconnected websites under the names "PubFilm" and "PidTV" (hereinafter, and as further defined below, the "PubFilm Websites") whose purpose is to profit from the infringement of copyrighted works.   Through these websites, Defendants illegally reproduce, stream, distribute and facilitate the further reproduction and distribution of vast numbers of unauthorized copies of many of the world's most popular motion pictures and television programs, including works whose copyrights Plaintiffs own or exclusively control and which bear Plaintiffs' famous and highly-distinctive trademarks.

The PubFilm Websites prominently feature and promote for on-demand streaming and download a collection of "top" motion pictures that are currently licensed for viewing only in theaters as well as television shows still in current first-run release.   Defendants identify and curate these infringing works by the particular piracy method by which each unauthorized copy was made, such as "Cam" (meaning that the copy was illegally recorded in a movie theater), "WebRip"

(meaning that the copy was illegally captured from a streamed version online), or "HDRip" (meaning that the copy was illegally ripped from a high-definition source).

The scale of Defendants' infringement is massive. The PubFilm Websites collectively draw more than eight million visits each month, nearly forty percent of which are from users located in the United States, making the sites among the most popular motion picture and television piracy streaming websites in the country. Defendants' illegal enterprise inflicts tremendous and irreparable damage on Plaintiffs' business and erodes the legitimate marketplace for access to Plaintiffs' motion pictures and television programs.

Defendants profit from their operation of the PubFilm Websites by displaying advertisements on the websites. Through the unauthorized distribution and/or public performance of free, popular motion pictures and television programs, Defendants are able to attract millions of users to the PubFilm Websites and thereby generate substantial ill-gotten advertising revenues.

Defendants operate the PubFilm Websites under aliases and have hidden their true identities and physical locations by providing false publicly-accessible WHOIS domain name registration information, in violation of ICANN (the Internet Corporation for Assigned Names and Numbers) and domain name registrar policies, and by using privacy protection services. Although Defendants' precise location is unknown, it is believed that Defendants operate the PubFilm websites from a location in Vietnam.

*Ex parte* relief is necessary here because advance notice would allow Defendants, who operate at the shadowy margins of the Internet, easily to disappear or move their operations beyond this Court's jurisdiction, thereby rendering Plaintiffs' enforcement efforts futile.

To halt Defendants' unlawful activities, Plaintiffs respectfully request that this Court issue *ex parte*: (i) a Temporary Restraining Order and Preliminary Injunction against Defendants, enjoining them from directly or indirectly infringing in any manner any of Plaintiffs' copyrighted

works or trademarks; (ii) an Order requiring the domain name registrars and registry for the PubFilm Websites to disable access to the domain names of the Pubfilm Websites and to prevent their transfer to anyone other than Plaintiffs during the pendency of this case; and (iii) an Order allowing service by electronic mail.

## **BACKGROUND**

### I.    **The Parties**

#### A.    **Plaintiffs**

Plaintiffs are businesses that, either directly or through their affiliates, are responsible for creating and distributing some of the most popular and critically-acclaimed motion pictures and television shows in the world.  Declaration of Kenneth L. Doroshow ("Doroshow Decl.", submitted herewith) ¶ 2.  Plaintiffs distribute and license their copyrighted works in the form of DVDs, Blu-Ray discs and other tangible media throughout the United States and the world.  *Id.* Plaintiffs also distribute, publicly perform, and license their works in the form of digital files through legitimate and authorized Internet video-on-demand ("VOD") services, such as Netflix, Hulu, iTunes and Amazon Prime, which are available throughout the United States, including in New York.  *Id.*[1]

Under the Copyright Act, Plaintiffs have the exclusive rights, among other things, to "reproduce the copyrighted work[s]," to "distribute copies … of the copy righted work[s] to the public," to "perform the copyrighted work[s] publicly," as well as to authorize or license such activities.  17 U.S.C. § 106.

---

[1] Plaintiff Viacom International, Inc., has its principal place of business in New York, New York. Declaration of Deborah Robinson ("Robinson Decl.", submitted herewith) ¶ 3.  The other Plaintiffs each have their principal places of business in California, but conduct substantial business operations in New York.  *See* Declaration of David Phillip Kaplan ("Kaplan Decl.", submitted herewith) ¶ 4; Declaration of Daniel Kim ("Kim Decl.", submitted herewith) ¶ 3; Declaration of Steve Kang ("Kang Decl.", submitted herewith) ¶ 3.

Each of these Plaintiffs owns or controls the copyrights and/or exclusive reproduction, distribution and performance rights to hundreds of popular motion pictures and television programs infringed by Defendants ("Plaintiffs' Works"), including for illustrative purposes those listed on Exhibit A to the Complaint.   Declaration of David Phillip Kaplan ("Kaplan Decl.", submitted herewith) ¶¶ 6-7; Declaration of Daniel Kim ("Kim Decl.", submitted herewith) ¶ 5; Declaration of Michael Stanton ("Stanton Decl.", submitted herewith) ¶¶ 5-6; Declaration of Steve Kang ("Kang Decl.", submitted herewith) ¶¶ 5-6; Declaration of Marsha L. Reed ("Reed Decl.", submitted herewith) ¶¶ 5-6; Declaration of Gabriel D. Miller ("Miller Decl.", submitted herewith) ¶¶ 5-6; Declaration of Deborah Robinson ("Robinson Decl.", submitted herewith) ¶¶ 7-9.   Each Plaintiff has received Certificates of Copyright Registration from the Register of Copyrights for the copyrighted Works listed on Exhibit A to the Complaint.   Kaplan Decl. ¶ 6; Kim Decl. ¶ 5; Stanton Decl. ¶ 5; Kang Decl. ¶ 5 Reed Decl. ¶ 5; Miller Decl. ¶ 5; Robinson Decl. ¶ 8.

Each of these Plaintiffs owns the entire right, title and interest in and to certain valid and subsisting trademarks, service marks and/or design marks ("Plaintiffs' Marks"), many of which have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, for use in connection with various types of goods and services, including the types of goods and services that are the subject of this action.   An illustrative list of Plaintiffs' Marks that Defendants have infringed, and continue to infringe, is set forth in Exhibit B to the Complaint.   Kaplan Decl. ¶¶ 8-9; Kim Decl. ¶¶ 6-7; Stanton Decl. ¶¶ 7-8; Kang Decl. ¶¶ 7-8 Reed Decl. ¶ 7; Miller Decl. ¶¶ 7-8; Robinson Decl. ¶¶ 10-11.

### B.    Defendants

Defendants own and operate several interrelated websites, including PubFilm.com, PubFilmno1.com, PubFilmhd.com, PidTV.com, Top100film.com and IDMCA.net (collectively, the "PubFilm Websites," the domain names of which are collectively the "PubFilm Domain

Names").   Declaration of Bob Brasich ("Brasich Decl.", submitted herewith) ¶¶ 6, 15-16. Defendants Phat Bui and Does 1-10 d/b/a the PubFilm Websites are individuals who own and/or operate the PubFilm Websites, but whose legal or personal identities and true addresses are currently unknown to Plaintiffs. *Id.* ¶¶ 20, 24.  On information and belief, Defendants reside and operate the PubFilm Websites from outside the United States, in Vietnam. *Id.* ¶¶ 25-27.

## II.    The PubFilm Websites

Defendants operate and control the PubFilm Websites under the brand names "PubFilm" and "PidTV" and the  and  logos.  Brasich Decl. ¶¶ 6, 15-17.  The PubFilm Websites provide on-demand streaming performances of infringing copies of Plaintiffs' Works and allow users to download unauthorized copies of those Works. *Id.* ¶ 6.  The PubFilm Websites allow users to access the infringing copies of Plaintiffs' Works through links to computer servers on which those infringing copies are hosted.  Defendants uploaded most, if not all, of the infringing copies of Plaintiffs' Works that are available on those computer servers. *Id.* ¶ 13; *see also id.* ¶¶ 8-10.

The infringing nature of the PubFilm Websites' offerings is obvious from even a cursory glance.  For instance, the home page of the PubFilm.com website prominently displays some of the latest and most popular motion pictures and television programs—including unauthorized copies of promotional artworks for those motion pictures and television programs, which are themselves copyrighted works and contain Plaintiffs' Marks—on offer for streaming and download by users:



Brasich Decl. ¶¶ 6, 8.

With a few simple clicks, users of the PubFilm Websites can view unauthorized copies of Plaintiffs' Works and, using an in-page video player that Defendants built into the PubFilm Websites, can also download unauthorized copies of the Plaintiffs' Works directly to their own

computers.  Brasich Decl. ¶¶ 8-9.  Users can easily search the PubFilm Websites for the content they seek, including by user-friendly categories of genres (*e.g.*, comedy, action, adventure, etc.) that Defendants curate and provide.  *Id.* ¶ 7.  Indeed, Defendants recently added a navigation link to the PubFilm Websites for "New Movies In Theaters," allowing users to access unauthorized copies of such movies more easily.  *Id.*

The process of accessing infringing copies of Plaintiffs' Works on the PubFilm Websites is straightforward:  When a user clicks on the promotional artwork for a particular motion picture or television program, he or she is directed to another webpage that displays a large-size copy of Plaintiffs' copyrighted promotional artwork, along with detailed information about the work such as a plot synopsis, IMDB and Rotten Tomatoes ratings, and information about the principal cast and director.  *Id.* ¶ 8.  That page also provides a button that, when clicked, will commence the streaming of the work through an in-page video player selected and built into the website by Defendants, which allows the user to watch the entire work for free.  *Id.* ¶ 9.  Using the PubFilm in-page video player, the user may also download an unauthorized copy of the works directly to his or her own computer.  *Id.*

By way of example, the following is how the page for the new and popular feature film "Pete's Dragon" (owned by Plaintiff Disney Enterprises, Inc. ("DEI")) appears on PubFilm.com, which includes the copyrighted promotional artwork for the film as well as DEI's well-known and registered "Disney" trademark:



Brasich Decl. ¶ 8.

Defendants' in-page player (which includes both streaming and "Download Video" buttons) appears below this information—where, again, DEI's well-known and registered trademarks are prominently displayed—as follows:



Brasich Decl. ¶ 9.

Content on PubFilm is freely available to anyone who visits the sites. *Id.* ¶ 12. Defendants generate revenue by placing digital advertisements throughout the sites. For example, the following banner advertisement appeared on the PubFilm page for "Pete's Dragon":



Brasich Decl. ¶ 12.

Among the works displayed and reproduced by Defendants are a large number of motion pictures and television programs owned by Plaintiffs, and detailed in Exhibit A to the Complaint, and related promotional artwork.  *See id.* ¶ 10; Doroshow Decl. ¶¶ 3, 6.  Plaintiffs have not authorized Defendants to perform, reproduce, distribute or otherwise exploit Plaintiffs' Works in any way.  Kaplan Decl. ¶ 15; Kim Decl. ¶ 13; Stanton Decl. ¶ 14; Kang Decl. ¶ 14; Reed Decl. ¶ 11; Miller Decl. ¶ 12; Robinson Decl. ¶¶ 14-15.  Indeed, many of Plaintiffs' Works that Defendants provide to users via PubFilm are still in limited commercial release, such as movies available only in theaters and not yet legally available for streaming online.  *See* Brasich Decl. ¶ 10; Reed Decl. ¶ 12.  Defendants even note on the PubFilm Websites whether each illegal copy of Plaintiffs' Works is, for instance, a "Cam" (*i.e.*, a copy illegally recorded with a camcorder or smartphone in a movie theater), "WebRip" (*i.e.*, a copy illegally captured from a streamed version online), or "HDRip" (*i.e.*, a copy illegally ripped from a protected high-definition source).  Brasich Decl. ¶ 10.  Each instance of Plaintiffs' Works on the PubFilm Websites is also accompanied by the unauthorized display of Plaintiffs' Marks, as the example above illustrates.  *Id.* ¶ 8.

The PubFilm Websites are "closed" websites—meaning they do not allow users to upload

content or make changes to the content available on the sites.  *Id.* ¶ 10.  Thus, Defendants are solely responsible for the content on the PubFilm Websites, including the infringing copies of Plaintiffs' Works and the infringing uses of Plaintiffs' Marks.  Brasich Decl. ¶ 10; *see also id.* ¶ 13.

The scale of Defendants' infringement through the PubFilm Websites is massive.  The PubFilm Websites collectively draw more than eight million visits each month, nearly forty percent of which are from users located in the United States, making the sites among the most popular motion picture and television piracy streaming websites in the United States.  *Id.* ¶ 18. Defendants drive this traffic to the PubFilm Websites through various means, including by promoting the PubFilm Websites and their infringing content on their Facebook account and through the use of metadata and keywords designed to maximize the PubFilm Websites' visibility and priority in search results from Internet search engines.  *Id.*  The metadata for the PubFilm Websites include such terms as "Watch movie and TV Show PubFilm HD Free," "watch movies online free full hd" and "watch movie high speed no ads."  *Id.*  Defendants' promotion also includes the use of searchable keywords to describe the infringing content on the PubFilm Websites as "New Movies," in "HD" (*i.e.*, high definition) and "New Series," as well as references to other notorious websites that have been the subject of criminal prosecution for copyright infringement (such as "kickass.to" and "thepiratebay.se") to draw users seeking infringing content to the PubFilm Websites.  *Id.*

## III.   Defendants' Efforts To Evade Detection And Enforcement

Until recently, Defendants' primary website was PubFilm.com, to which nearly all of Defendants' other websites would automatically redirect traffic.  Brasich Decl. ¶ 21; *see also id.* ¶ 17.  In late July 2016, however, PubFilm.com was the subject of an order from the Malaysian government that required Malaysian Internet service providers to block Malaysian users' access

to the site.  *Id*. ¶ 21.  The Malaysian order was a response to complaints by copyright owners in Malaysia (including affiliates of Plaintiffs in this action) regarding PubFilm.com, which by that time had become one of the most viewed websites in that country.  *Id*.

Immediately following the Malaysian order, Defendants, on or about August 15, 2016, created a new website called "PidTV.com" and began redirecting traffic from several other PubFilm Websites to the new website.  Brasich Decl. ¶ 22.  The content on PidTV.com was (and still is) identical to that on PubFilm.com and employed the same video player as PubFilm.com, which was (and still is) hosted at the website player.pubfilm.com.  *Id*.[2]  Over the past few months, Defendants have treated the PubFilm.com and PidTV.com websites as interchangeable, directing user traffic to and from each of those websites, evidently depending on the focus of enforcement activities with respect to each site at the time.  *Id*.  As recently as October 31, 2016, all of the PubFilm Websites—with the exception of PubFilm.com—automatically redirected user traffic to PidTV.com, which currently functions as Defendants' primary site.  *Id*.  Today, only PubFilmNo1.com resolves to PidTV.com, while PubFilm.com still resolves to itself.  *Id*.

Defendants have also structured their websites to conceal their infringing activities from their suppliers of digital advertising and its accompanying revenue.  For example, Defendants employed a New York-based advertising service known as "DoubleClick," whose policies expressly provide that "if we receive a notice or otherwise have reason to believe that your site is infringing, we may terminate your participation in the program."  Brasich Decl. ¶ 23.  Evidently to avoid this policy, Defendants created a separate website, "ads.phatbui.us," on which DoubleClick displayed advertisements.  Defendants configured the PubFilm.com and PidTV.com

---

[2] To host the player.pubfilm.com website, Defendants have leased server space from DigitalOcean, Inc., a web hosting provider located in this district.  *Id.* ¶ 14.

websites to "frame" (*i.e.*, to incorporate visually) those displays from the ads.phatbui.us website, thereby creating the impression from the perspective of a user that the advertisements were in fact displayed on PubFilm.com and PidTV.com.   Because DoubleClick interacted only with ads.phatbui.us—which itself displayed only motion picture trailers along with the advertisements that DoubleClick provided—Defendants could conceal their infringing activities on PubFilm.com and PidTV.com from DoubleClick and thereby avoid termination under DoubleClick's policy.  *Id*. On or about November 2, 2016, however, DoubleClick ceased supplying advertisements to the ads.phatbui.us website.  *Id.*  On November 28, 2016, Defendants employed a different site— Ads.Fmovie.me—for the same purpose of displaying advertisements that the PubFilm Websites would frame, after which DoubleClick resumed its services to the site.  A few days later, however, DoubleClick once again ceased supplying advertisements to the newly-configured site.  *Id.*

Defendants also go to lengths to conceal their true identities.  For example, the PubFilm Websites are devoid of any identifiable names or real addresses, and Defendants communicate with potential users only through Defendants' social media accounts or email, without revealing their true identities.  *Id.* ¶ 24.  The Internet Corporation for Assigned Names and Numbers ("ICANN"), the body that governs domain names, has adopted the Uniform Domain Dispute Resolution Policy (the "ICANN Policy"), which requires each registrant of a domain name to provide complete and accurate information to identify the registrant.  Despite the ICANN Policy, Defendants' WHOIS domain name registrant names and addresses are incomplete or false, containing, for example, nonexistent street addresses.  *Id.*  In other instances, Defendants' names and addresses are concealed by Defendants' use of a privacy protection service.  *Id.*  As a result of Defendants' deception and concealment, Plaintiffs are currently unaware of Defendants' true identities and specific locations.  *Id.*

## ARGUMENT

**I.   This Court Should Issue An *Ex Parte* Temporary Restraining Order And Domain Seizure Order.**

### A.   This Court Has The Authority To Issue Temporary Injunctive Relief.

This Court's "'inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief'" encompasses temporary injunctions.  *Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95 Civ. 9341, 1997 WL 223077, at *7 n.19 (S.D.N.Y. May 1, 1997) (quoting *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992)).   Rule 65 of the Federal Rules of Civil Procedure authorizes the court to issue injunctions binding parties, parties' officers, agents, servants, employees, and attorneys and any "other persons who are in active concert or participation with" those previously listed.  Fed. R. Civ. P. 65(d)(2). Further, this Court "may issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[ ] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); *see also In re Vuitton et Fils S.A.*, 606 F.2d 1, 3 n.5 (2d Cir. 1979) (per curiam).

Courts often issue injunctive relief on the basis of Copyright Act or Lanham Act violations. 17 U.S.C. § 502(a); 15 U.S.C. § 1116(a); *see, e.g.*, TRO, *Arista Records LLC v. Tkach*, No. 15-cv-3701-AJN (S.D.N.Y. May 13, 2015) (Dkt. No. 18) (Copyright Act and Lanham Act); Prelim. Inj. Order, *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-cv-1112 (VSB), slip op. at 1-4 (S.D.N.Y. Mar. 4, 2014) (Dkt. No. 21) (Copyright Act); *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 140, 146, 149, 157 (E.D.N.Y. 2011) (Copyright Act and Lanham Act);  *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 336 (S.D.N.Y. 2011) (Lanham Act); TRO, *True Religion Apparel, Inc. v. Xiaokang Lei*, No. 11-cv-8242 (HB), slip op. at 6-7, 9-10, 14-15 (S.D.N.Y. Nov. 17, 2011) (Dkt. No. 7) (hereinafter "*True Religion* TRO") (Copyright Act and Lanham Act).

The applicable standards for a TRO and preliminary injunction are the same.  Either form

of interim relief is appropriate upon a showing that (1) the movant will suffer irreparable harm in the absence of such relief and (2) *either* a likelihood of success on the merits *or* "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012); *see also Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 375 (S.D.N.Y. 2009) (standards are the same).  In addition, (3) the "court must consider the balance of hardships between the plaintiff and defendant," *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010), and (4) "ensure that the injunctive provisions of the order do not harm the public interest," *Briggs & Stratton Corp. v. Chongquing Rato Power Co.*, No. 13-cv-316 (LEK/ATB), 2013 WL 3972391, at *1 n.4 (N.D.N.Y. July 23, 2013); *see SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) (per curiam).

As demonstrated *infra* Parts II-V, Plaintiffs readily meet this standard.  Defendants' actions—the unauthorized copying, distribution, display and public performance of Plaintiffs' protected visual (*e.g.*, promotional artwork) and audiovisual works, and unauthorized use of Plaintiffs' marks—plainly constitute copyright and trademark infringement.  With each day of their continued use, the PubFilm Websites pose an immediate threat to Plaintiffs' businesses and, indeed, the entire motion picture and television industry.  The balance of hardships thus falls decisively in favor of interim relief, and such relief would fully serve the public interest.

### B.    This Court Has The Authority To Issue A Seizure Order And Injunctive Relief *Ex Parte.*

This Court has the authority to grant an *ex parte* TRO where the moving party sets forth facts that demonstrate an immediate and irreparable injury and show good cause why notice should not be required.  Fed. R. Civ. P. 65(b)(1); *see Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974) ("Ex parte temporary restraining orders are no doubt necessary in certain circumstances . . . .").  This Court's Local Rule 6.1(d) requires

15

"a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previous application for similar relief has been made." L.R. 6.1(d). In general, courts will grant Rule 65(b) *ex parte* injunctive relief in two situations: (1) when notice is impossible because plaintiff cannot identify defendants or their locations; or (2) a showing that proceeding *ex parte* is the only method that will provide plaintiff with effective relief. *See In re Vuitton*, 606 F.2d at 5; *Am. Can Co. v. Manusukhani*, 742 F.2d 314, 322 (7th Cir. 1984); *Nguyen v. Trojan Capital Invs., LLC*, No. SACV 14-1983-DOC (RNBx), 2015 WL 268919, at *2 (C.D. Cal. Jan. 16, 2015); TRO, *N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*, No. 10-cv-1630 (AKH), slip op. at 1-4 (S.D.N.Y. Mar. 2, 2010) (Dkt. No. 15) (hereinafter "*Fujian* TRO").

Courts have consistently recognized the need for granting *ex parte* TROs against intellectual property infringers under Rule 65(b). *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 554 (9th Cir. 1992); *U2 Home Entm't, Inc. v. Bowery Music City, Inc.*, No. 03 Civ. 8909 (RJH), 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8, 2003). And under similar facts in other cases, courts have granted interim relief that is even broader than the relief that Plaintiffs request here. *See, e.g.*, *In re Vuitton*, 606 F.2d at 3 (issuing writ of mandamus ordering district court to grant *ex parte* relief (citing Fed. R. Civ. P. 65)); *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 33-34 (S.D.N.Y. 2015) (describing terms of TRO previously ordered); *Fujian* TRO, slip op. at 6-9; *Century Home Entm't, Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636, 637-38 (E.D.N.Y. 1994); TRO, *Liberty Media Holdings, LLC v. FF Magnat Ltd.*, No. 12-cv-1057 (GMN-RJJ), slip op. at 2-3 (D. Nev. June 21, 2012) (Dkt. No. 11) (hereinafter "*Liberty Media* TRO").

In *Liberty Media*, for example, plaintiffs brought direct and secondary copyright claims against the operator of an online storage service known as a "cyberlocker," which users used to upload and share unauthorized digital copies of the plaintiffs' motion pictures. After finding that

16

the defendant was likely to succeed on such claims, the court issued an *ex parte* TRO ordering the domain name registry VeriSign, Inc. (the same registry that administers the top-level ".com" domain of which the PubFilm Websites are a part) to freeze the defendant's domain name to prevent it from being transferred. *Liberty Media* TRO, at 2-3. Other courts have used their inherent authority to issue similar *ex parte* interim relief in cases involving copyright claims. *See, e.g.*, TRO, *Mon Cheri Bridals, LLC v. P'ships*, No. 3:15-cv-00021 (FDW-DCK), slip op. at 9-10 (W.D.N.C. June 4, 2015) (Dkt. No. 12); *ABS-CBN Int'l v. Freepinoychannel.com*, No. 15-61002-civ-Dimitrouleas/Snow, 2015 WL 11069997, at *4-6 (S.D. Fla. May 15, 2015) (hereinafter "*ABS-CBN* TRO"); TRO, *Datatech Enters., LLC v. FF Magnat Ltd*, No. 12-cv-4500 (CRB), slip op. at 2-3 (N.D. Cal. Aug. 28, 2012) (Dkt. No. 9); *Shutterfly, Inc. v. ForeverArts, Inc.*, No. CR 12-3671 (ST), 2012 WL 2911887, at *3-4 (N.D. Cal. July 13, 2012); *True Religion* TRO, slip op. at 14-15.

Similarly, in *Fujian,* an action against a group of individuals selling counterfeit goods over the Internet from China to consumers in the United States, the District Court granted an *ex parte* TRO, seizure order, asset restraining order, and a domain-name transfer order, all of which were later continued by a permanent injunction order. These orders, *inter alia*:

- enjoined the defendants' infringing activities;

- ordered registries and registrars of the Internet domains used in connection with infringing websites to temporarily disable access to the websites, pending further order of the court; and

- ordered any third-party provider servicing defendants and their websites—including Internet service providers, hosting providers, and domain name registries—to deliver to plaintiffs copies of documents and records relating to the defendants and their websites, assets, and business operations upon receiving notice of the TRO.

*Fujian* TRO, at 5-9. The injunction put domain registries and registrars on notice to stop allowing customers to connect to the defendants' websites. *See* Order, *Fujian*, No. 10 Civ. 1630 (SKH), slip op. at 5-6 (S.D.N.Y. June 24, 2011) (Dkt. No. 56). The Court held, further, that the registries'

and registrars' failure to take corrective action upon receiving such notice would constitute aiding and abetting the enjoined defendants' unlawful activities and would violate the permanent injunction. *Id.* Numerous courts have issued similar *ex parte* orders in trademark cases. *See, e.g.*, TRO, *Microsoft Corp. v. Does 1-8*, No. 1:14-cv-811 (LOG), slip op. at 9-10 (E.D. Va. June 27, 2014) (Dkt. No. 16); TRO, *NFL v. Cheng*, No. 11-cv-344 (WHP), slip op. at 8, 12-13 (S.D.N.Y. Jan. 19, 2011) (Dkt. No. 7) (hereinafter "*NFL* TRO"); TRO, *Tiffany (NJ), LLC v. Liu Dongping*, No. 10-cv-61214 (PAS), slip op. at 7, 9-12 (S.D. Fla. July 20, 2010) (Dkt. No. 10).

## C.  *Ex Parte* Relief Is Essential In This Case.

The extraordinary circumstances of this case demonstrate that good cause exists for granting the *ex parte* relief requested. Indeed, for injunctive relief to be effective at all, the Court must grant Plaintiffs' application *ex parte*.

Courts have recognized that a preliminary injunction is insufficient in cases involving anonymous online infringers who have taken steps to move their businesses beyond the reach of judicial process. Indeed, courts regularly issue *ex parte* orders in recognition of the covert nature of online piratical activity. *See supra* Part I(B).

Here, Defendants operate in the shadows of the Internet under false contact information and with the flexibility to move their operations anywhere in the world—and thereby to evade this Court's jurisdiction—in an instant. Brasich Decl. ¶¶ 20, 24-25, 30. As Plaintiffs' extensive experience with virtually identical online piracy schemes and the behavior of similar Defendants has shown, Defendants are highly likely to respond to notice of this action either by disappearing or moving all of their operations abroad. *Id.* ¶ 30; *see First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir. 1993) (noting that party seeking *ex parte* TRO may support its assertions by showing that "persons similar to the adverse party" have a "history of disposing of evidence or violating court orders").

In particular, advance notice of a TRO would allow Defendants to move their ads.phatbui.us and player.pubfilm.com websites from their current host servers with DigitalOcean, Inc. in New York to a hosting provider abroad.  Brasich Decl. ¶ 30.  Similarly, with advance notice, Defendants could change the PubFilm Websites' domain names from their current U.S.-based ".com" and ".net" domains, and from the U.S.-based registrar through which those domain names are currently registered, to a registry and registrar outside the United States, beyond the reach of this Court.  *Id*.  Operating from a non-U.S. based server, and with a non-U.S.-based domain registry, Defendants could continue to operate the PubFilm Websites effectively with impunity. *Cf. ABS-CBN* TRO, 2015 WL 11069997, at *3 (granting *ex parte* TRO because "if Plaintiffs proceed on notice to Defendants . . . Defendants can easily and quickly transfer the registrations for many of the subject Domain Names").  Indeed, that is precisely what operators of websites facilitating online piracy have done in other cases before this Court.  *See Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 34 (S.D.N.Y. 2015) (discussing how plaintiffs were drawn into a "technological globetrotting game of 'whack-a-mole'" in an effort to enforce injunction against online copyright and trademark infringers).  In short, with notice, Defendants could, and likely would, render this action meaningless before the Court would be able to adjudicate the parties' rights.

Accordingly, this Court should enter an *ex parte* TRO directing the domain name registrar and registry for the PubFilm Domain Names to disable the PubFilm Domain Names and re-register them in Plaintiffs' names and under Plaintiffs' ownership, pending further direction from this Court.  Similar remedies have been imposed through *ex parte* TROs in other cases.  *See, e.g.*, *Adidas AG v. Addidas2013online.com*, No. 13-24398-civ, 2013 WL 6667043, at *10 (S.D. Fla. Dec. 17, 2013); TRO, *Microsoft Corp. v. Does 1-8*, No. 13-CV-1014 (SS), slip op. at 12 (W.D. Tex. Nov. 25, 2013) (Dkt. No. 17).

**II.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims.**

**A.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims For Direct Copyright Infringement.**

Plaintiffs are likely to succeed on the merits of their direct copyright infringement claims under 17 U.S.C. §§ 106(1), (3), (4) and (5)—indeed, the claims are beyond dispute.  Plaintiffs need only show two elements for direct infringement:  (1) that they own valid copyrights in Plaintiffs' Works, and (2) that Defendants engaged in the reproduction, distribution, public performance or public display of copies of Plaintiffs' Works without authorization from Plaintiffs.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010); *UMG Recording, Inc. v. Escape Media Grp., Inc.*, No. 11 Civ. 8407, 2014 WL 5089743, at *19 (S.D.N.Y. Sept. 29, 2014) (hereinafter "*Escape Media*").

Plaintiffs' ownership is conclusively established by the Declarations in support of this Motion.  Plaintiffs are the owners or exclusive licensees of copyrights in the Plaintiffs' Works listed in Exhibit A to the Complaint, each of which is the subject of a certificate of registration from the U.S. Copyright Office.  Kaplan Decl. ¶ 6; Kim Decl. ¶ 5; Stanton Decl. ¶ 5; Kang Decl. ¶ 5 Reed Decl. ¶ 5; Miller Decl. ¶ 5; Robinson Decl. ¶ 8.   Such registrations are *prima facie* evidence of valid copyright ownership.  *See Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992).

It is also beyond dispute that Defendants are engaged in the unauthorized reproduction, distribution, public performance and display of Plaintiffs' Works.  As demonstrated in the accompanying Declaration of Bob Brasich, Defendants have uploaded unauthorized copies of Plaintiffs' Works to servers that are used to publicly perform, distribute and display those Works to users of the PubFilm Websites; additionally, Defendants allow users to download copies of Plaintiffs' Works directly to their computers.  Brasich Decl. ¶¶ 6-10, 13.   Such uploading of copyrighted works without authorization and permitting of unauthorized downloads constitutes direct infringement of Plaintiffs' exclusive rights of reproduction and distribution under the

20

Copyright Act, 17 U.S.C. §§ 106(1), (3).  *See, e.g., Escape Media*, 2014 WL 5089743, at \*20-21, \*23, \*26 (concluding that defendants were liable for direct infringement because they "uploaded copies" of copyrighted works); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts."); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648-51 (S.D.N.Y. 2013) (finding direct copyright infringement where defendant website offered copyrighted sound recordings for download); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006) (collecting cases showing same); *see also Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 147 (S.D.N.Y. 2009) ("[T]he delivery of articles and/or content to download at the request of subscribers can be the basis of direct infringement of the distribution right.").

Moreover, Defendants' unauthorized streaming of Plaintiffs' Works to users of the PubFilm Websites constitutes direct infringement of Plaintiffs' exclusive public performance rights under 17 U.S.C. § 106(4).  *See, e.g., Am. Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2507, 2510 (2014) (concluding that unauthorized streaming of broadcast television programming directly infringed copyright owners' public performance rights); *Capitol Records, LLC v. Escape Media Grp.*, No. 12-CV-6646 (AJN), 2015 WL 1402049, at \*38-39 (S.D.N.Y. Mar. 25, 2015) (hereinafter "*EMI*") (concluding that operators of pirate website directly infringed record companies' copyrights by streaming copyrighted sound recordings).  And Defendants' display of copyrighted promotional artwork for Plaintiffs' Works on the PubFilm Websites directly infringes Plaintiffs' exclusive display rights under 17 U.S.C. § 106(5).  *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) (unauthorized display of thumbnail copies of plaintiff's copyrighted images from defendant's servers was *prima facie* infringement of plaintiff's display right).

**B.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims For Secondary Copyright Infringement.**

Plaintiffs also are likely to succeed on the merits of their secondary infringement claims. As noted above, Defendants, through the PubFilm Websites, openly and notoriously catalog, promote and link to unauthorized copies of Plaintiffs' Works, which results in the pervasive infringement of Plaintiffs' copyrights in those works. *See supra* pages 5-11, 20-21. Defendants are secondarily liable for this infringement under the theories of vicarious liability, contributory liability, and inducement of infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 934-35 (2005) (recognizing separate doctrines of secondary liability).

1.      Defendants Are Vicariously Liable For Copyright Infringement.

Parties are vicariously liable for copyright infringement when they "profit[] from direct infringement while declining to exercise a right to stop or limit it." *Id.* at 930; *EMI*, 2015 WL 1402049, at *41-43; *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 423 (S.D.N.Y. 2011) (hereinafter "*LimeWire*"). To satisfy this requirement, a plaintiff must show "a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (emphasis in original); *Usenet.com*, 633 F. Supp. 2d at 157. Such a relationship is established when the infringing material acts as a "draw" to attract users. *Usenet.com*, 633 F. Supp. 2d at 156-57.

Here, infringing content is a substantial—and evidently the only—draw to the PubFilm Websites. As noted above, the PubFilm Websites feature many of the latest and most popular motion pictures and television shows, including such recent films as "Fences" (still in theaters) and "Passengers" (also still in theaters). Brasich Decl. ¶¶ 6, 10. Defendants use the free availability of these and other popular works to attract users to the service and thereby to gain revenue from advertisements placed on the PubFilm Websites—the more individuals who visit the

sites, the more money Defendants can make.  Brasich Decl. ¶ 12.  Indeed, in their marketing

through search engines, as well as on the Facebook page through which they promote the PubFilm

Websites, Defendants invite users expressly to "[w]atch movie and TV Show PubFilm HD Free."

*Id.* ¶ 18.  The causal relationship between the infringing behavior and Defendants' profits is

abundantly clear.  *See EMI*, 2015 WL 1402049, at *42-43; *LimeWire*, 784 F. Supp. 2d at 435.

### 2.  Defendants Are Liable For Inducement Of Copyright Infringement.

A defendant is liable for inducement if he or she "(1) engaged in purposeful conduct that

encouraged copyright infringement, with (2) the intent to encourage such infringement."

*LimeWire*, 784 F. Supp. 2d at 425; *Usenet.com*, 633. F. Supp. 2d at 150-51 (same).  Defendants

unquestionably promote and operate the PubFilm Websites with the object of encouraging the

infringement of copyrights in popular movie and television content, including Plaintiffs' Works.

Indeed, not only do Defendants offer users popular and obviously copyrighted film and television

content for streaming on demand, but they also prominently encourage users, through Defendants'

built-in video player, to download unauthorized copies of those works.  Brasich Decl. ¶ 9.

Defendants' inducement of infringement is beyond dispute.

### 3.  Defendants Are Liable For Contributory Copyright Infringement.

It is well settled that "one who, with knowledge of the infringing activity, induces, causes

or materially contributes to the infringing conduct of another, may be held liable as a contributory

infringer."  *Arista Records, LLC v. Doe 3*, 604 F.3d at 117 (internal quotation marks and citation

omitted).  The evidence of Defendants' knowledge of the infringement that occurs through the

PubFilm Websites, as well as Defendants' material contribution to that infringement, is abundantly

clear.  Indeed, Defendants identify and curate these infringing works by the particular piracy

method by which each unauthorized copy was made, such as "Cam," "WebRip" or "HDRip," and

even provide a hyperlink to a Wikipedia page that lists and explains "Pirated Movie Release

Types."  Brasich Decl. ¶ 10.  Moreover, by providing the very means by which infringing copies of Plaintiffs' Works are reproduced, distributed, performed and displayed, Defendants—at a minimum—materially contribute to this infringement. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (holding that "assist[ing] a worldwide audience of users to access infringing materials" constitutes material contribution); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1163 (2d Cir. 1971) ("[Defendant's] pervasive participation in the formation and direction of [platform that performed the infringing works] amply support[s] the district court's finding that it 'caused this copyright infringement.'").

### C.   Plaintiffs Are Likely To Succeed On The Merits Of Their Trademark Infringement Claims.

To establish liability for trademark infringement, Plaintiffs must show that: (1) the marks at issue are entitled to protection; (2) Defendants do not have consent to use the marks; (3) Defendants use the marks to distribute or advertise copies of Plaintiffs' Works; and (4) Defendants' use of the marks is likely to cause confusion.  *See* 15 U.S.C. § 1114(1); *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999).  Each of these elements is met here.

Plaintiffs' Marks are clearly entitled to protection.  Through their pleadings and declarations, Plaintiffs have verified that they are the owners of the rights, title and interest in and to their respective Marks in connection with the distribution of copies of Plaintiffs' Works— unauthorized copies of which Defendants are distributing using Plaintiffs' Marks.  Doroshow Decl. ¶¶ 4, 6; *see* Kaplan Decl. ¶ 8; Kim Decl. ¶ 6; Stanton Decl. ¶ 7; Kang Decl. ¶ 7; Reed Decl. ¶ 7; Miller Decl. ¶ 7; Robinson Decl. ¶ 10.

Plaintiffs also have established that (i) Defendants' use of Plaintiffs' Marks is not authorized by Plaintiffs, and (ii) the unauthorized copies of Plaintiffs' Works that Defendants are

offering bear marks that are identical to or substantially indistinguishable from Plaintiffs' federally registered marks, which Plaintiffs are using in commerce.  Brasich Decl. ¶¶ 8-9; Doroshow Decl. ¶¶ 6-7.  As to the element of likelihood of confusion, courts in this District have determined that, "where [identical] marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor" to find likelihood of confusion because such marks "are inherently confusing."  *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005) (internal quotation marks and citation omitted); *see also Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (same).

Moreover, courts throughout the Second Circuit have found infringement where defendants have used the plaintiffs' trademarks to distribute unauthorized goods, in part because the plaintiffs are unable to control the quality of those goods.  As the Second Circuit opined, "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods [distributed] under the holder's trademark."  *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986); *see also Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (holding that defendant infringed Shell trademark by marketing bulk authentic Shell oil according to its own and not Shell's quality control standards); *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 75 (2d Cir. 1987) (Cardamone, J., concurring) (concluding that territorial restriction preventing United States sale of Cabbage Patch dolls with Spanish-language instructions is quality control measure, and opining that sale of dolls in United States therefore infringes trademark); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 571-74 (D.N.J. 2003) (weighing likelihood of confusion factors and concluding use of studio marks in movie trailers edited by infringer constituted trademark infringement).  Indeed, infringement may be found irrespective of whether the goods actually deteriorated.  *See El Greco Leather Prods. Co.*, 806 F.2d at 395 ("[T]he actual

quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain.").

Here, Plaintiffs have the right to control the quality of Plaintiffs' Works, including when and in what manner the works are distributed.  Doroshow Decl. ¶ 4.  Defendants distribute infringing copies of Plaintiffs' Works without regard to Plaintiffs' quality controls—indeed, Defendants often caution their users that a given copy of Plaintiffs' Works on the PubFilm websites is not of "high quality," but that "temporarily it is the best version out there."  Brasich Decl. ¶ 11. It is no surprise, then, that users of the PubFilm Websites frequently complain about the quality of Plaintiffs' Works on Defendants' sites, such as "this copy doesn't have the entire picture" or "I'm seeing people move around and it's not in the movie.  It's people in the theater that are getting in the way."  *Id.*   Under these circumstances, Defendants' liability for trademark infringement is clear.[3]

## III.   Injunctive Relief Is Necessary To Prevent Irreparable Harm.

In the absence of a TRO, Plaintiffs face the immediate prospect of immense and irreparable harm.  Without the interim relief requested, Defendants will continue their brazen infringement of Plaintiffs' intellectual property.

### A.   Defendants' Copyright Infringement Will Cause Irreparable Harm.

"A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright(s)."  *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08 Civ. 7497 (KBF), 2014 WL 1883474, at *11 (S.D.N.Y. May 9, 2014) (quoting *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011)).  Without an

---

[3] For the same reasons, Plaintiffs are likely to succeed on the merits of their unfair competition and false designation of origin claim as well.  *See* Complaint, Count Four; *see also, e.g., Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (noting that the standards for trademark infringement, unfair competition and false designation of origin are substantially the same).

26

injunction, Plaintiffs would suffer a severe hardship as a result of Defendants' infringement. "[T]he fact that [p]laintiffs' [works] can be replicated into infinity, for free, establishes that a distinct hardship rests with [p]laintiffs." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007) (quoting *UMG Recordings, Inc. v. Blake*, No. 5:06-CV-00120-BR, 2007 WL 1853956, at *3 (E.D.N.C. June 26, 2007)).

Indeed, the injuries to Plaintiffs here are quintessentially irreparable.  The availability of free, infringing copies of Plaintiffs' works, viewable on the PubFilm Websites and available for unrestricted download, irreparably undermines the market for consumers to purchase access to the same works.  *See, e.g.*, *Grokster*, 545 U.S. at 928-29 (noting concern that the "digital distribution of copyrighted material threatens copyright holders as never before, because every copy is identical to the original, copying is easy, and many people (especially the young) use file-sharing software to download copyrighted works"); *China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM (MRWx), 2015 WL 3649187, at *13 (C.D. Cal. June 11, 2015) (concluding that infringing video streaming service caused irreparable harm because it "interfered with plaintiff's ability to develop a lawful market for internet distribution").

Plaintiffs' businesses depend on their ability to monetize consumers' access to their copyrighted motion pictures and television programs.  Plaintiffs achieve this monetization through license agreements with authorized distributors.  Declaration of Tedd Cittadine ("Cittadine Decl.", submitted herewith) ¶¶ 9-10, 13, 15.  Some of these licenses grant the licensee an exclusive time window for performing a given work.  *Id.* ¶¶ 16, 23.  The price for such a license is based, in part, on the promise and scope of exclusivity.  *Id.* ¶ 16.  Defendants operate without any license and, in many cases, perform and distribute Plaintiffs' works during exclusivity periods that Plaintiffs negotiated with their authorized distributors.  For example, Defendants currently offer on the PubFilm Websites the hit motion picture *Moana*, which was still exclusive to movie theaters at the

time it first became available on the PubFilm Websites.  Reed Decl. ¶ 12.  Defendants openly flaunt their interference with these exclusive windows by including a category of "New Movies In Theaters" on the PubFilm Websites.  Brasich Decl. ¶ 7.  Defendants thus interfere with Plaintiffs' exercise of their exclusive rights and frustrate Plaintiffs' ability to negotiate for similar rights in the future.  Cittadine Decl. ¶ 23.

Moreover, the PubFilm Websites threaten harm to Plaintiffs' relationships and goodwill with authorized distributors by undermining those distributors' ability to provide licensed offerings.  *See Complex Sys.*, 2014 WL 1883474, at *12 ("A loss of goodwill or reputation … may constitute irreparable harm.").  Licensees complain to Plaintiffs that their businesses suffer from competition with unlicensed services that offer low-cost or free content because they do not obtain licenses.  Cittadine Decl. ¶ 18.  Defendants' unrestrained conduct, in direct competition with Plaintiffs' licensees, thus threatens the legitimate online distribution market.  *Id.*; *see WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012) (holding that unrestrained unauthorized Internet retransmissions of broadcast programming "would encourage" other services to follow suit, diminish plaintiffs' negotiating position, adversely affect "quantity and quality of efforts put into creating" new works, and "drastically change the industry, to plaintiffs' detriment"), *cert. denied*, 133 S. Ct. 1585 (2013).  This is a paradigmatic irreparable harm.  *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999); *Complex Sys.*, 2014 WL 1883474, at *12.

The harm that Plaintiffs have suffered as a result of users viewing Plaintiffs' Works through the PubFilm Websites, while surely vast, is ultimately incalculable.  *See Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("[T]o prove the loss of sales due to infringement is notoriously difficult." (alteration and citation omitted)); *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) (noting that, in providing for statutory damages, the Copyright Act recognizes there are situations when actual damages are difficult to calculate and prove).  Where,

as here, damages are difficult to establish and measure, the harm is considered irreparable.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004); *Complex Sys.*, 2014 WL 1883474, at *12.

### B.    Defendants' Lanham Act Violations Will Cause Irreparable Harm.

Plaintiffs also are threatened with irreparable harm by Defendants' Lanham Act violations. Irreparable damage to a trademark owner may be shown through threatened loss of goodwill and loss of ability to control the owner's reputation.  *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 335 (S.D.N.Y. 2011); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010).  Indeed "[i]n a trademark infringement case, 'irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 158 (E.D.N.Y. 2013) (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)).

As discussed above, *supra* Part II(C), Plaintiffs have demonstrated a likelihood of consumer confusion, and therefore they have shown irreparable harm resulting from Defendants' trademark violations.  Because of the customer confusion that results from Defendants' display of Plaintiffs' Marks, "the reputation and goodwill cultivated by [Plaintiffs] [is] out of [their] hands." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order).  Because Plaintiffs' Marks appear on the infringing copies of Plaintiffs' Works on the PubFilm Websites, consumers may associate Plaintiffs' world-renowned brands with the PubFilm Websites, which are indisputably of lower quality than the services offered by Plaintiffs' legitimate licensees.  Brasich Decl. ¶ 11;  *see U.S. Polo Ass'n*, 800 F. Supp. 2d at 541 (noting that irreparable harm may occur because the product using plaintiff's mark "may or may not be of high quality, sold with sufficient care to customer

service, or convey the same branding image that has been carefully cultivated by [plaintiff]"). Defendants' use of Plaintiffs' Marks thus threatens to destroy the reputation and goodwill associated with Plaintiffs' brands and, therefore, threatens a classically irreparable harm to Plaintiffs.

## IV.    The Balance Of The Hardships Strongly Favors Plaintiffs.

The harm to Plaintiffs that will occur if the application is denied greatly outweighs the harm to Defendants' interests in continuing to provide their infringing services.  When a plaintiff establishes "both a likelihood of success on the merits and irreparable harm," by definition he or she has established that significant hardship would result absent injunctive relief.  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).  The potential hardship to Plaintiffs would be particularly severe here because Defendants' infringing activities go to the very core of Plaintiffs' business.  By contrast, Defendants will suffer no legitimate hardship in the event this Court issues a TRO because Defendants have no right to engage in their present activities, and "an infringer of copyright cannot complain about the loss of ability to offer its infringing product."  *Id.*; *see also CJ Prods.*, 809 F. Supp. 2d at 146 ("[O]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").  Given "the probable outcome of this action, this is a loss which [Defendants] may justifiably be called upon to bear."  *Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970);  *see also N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) ("Irreparable harm 'exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial,' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" (quoting *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985))).

## V.      The Relief Requested Will Further The Public Interest.

The public interest supports the relief sought here.[4]  "[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" those works.  *WPIX*, 691 F.3d at 287.  That is because "[i]nadequate protections for copyright owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works."  *Id*.  Furthermore, the public has a strong interest in not being misled as to the origin, source, or sponsorship of trademarked products.  *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976).

## VI.      Defendants Are Subject To Personal Jurisdiction.

Defendants are subject to personal jurisdiction before this Court.  Assessing personal jurisdiction requires a two-part analysis, examining (1) whether there is jurisdiction over the defendant under New York's long arm statute, and (2) whether exercising jurisdiction is consistent with federal due process requirements.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *accord Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010).  The exercise of jurisdiction over Defendants comports with both New York law and federal due process.

### A.      Defendants Are Subject To This Court's Personal Jurisdiction Under New York's Long Arm Statute.

Under New York's long arm statute, N.Y. C.P.L.R. § 302, courts in New York have

---

[4] "The 'public interest' prong does not mean that a court must consider the public interest in deciding *whether* to grant injunctive relief; rather, it means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest." *Briggs & Stratton Corp. v. Chongqing Rato Power Co.*, No. 13-cv-316 (LEK/ATB), 2013 WL 3972391, at *1 n.4 (N.D.N.Y. July 23, 2013); *see SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) (per curiam). For the reasons stated herein, the public interest would not be harmed by the relief sought here.

personal jurisdiction over a foreign defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). For jurisdiction to be proper under this provision, it is sufficient that "the defendant transacts any business in New York and . . . [the] cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and alteration omitted). As the New York Court of Appeals has held, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (citations omitted).

As noted, Defendants have contracted with DigitalOcean, Inc., a web-hosting company headquartered in New York City, to host at least two of their websites, including ads.phatbui.us (from which digital advertisements from DoubleClick were, until just a few months ago, embedded on the PubFilm Websites) and player.pubfilm.com (on which Defendants' video player for the PubFilm Websites is hosted). Brasich Decl. ¶¶ 14-15, 23. The relationship between this hosting arrangement and Defendants' unlawful operations is not only "substantial," but these websites— and the services they support—have been *integral* to Defendants' unlawful operations. *Id.* ¶¶ 9, 12, 14-15, 23. Accordingly, this Court's personal jurisdiction over Defendants is proper on this basis alone.

But even if this were not sufficient, New York's long arm statute also confers personal jurisdiction over foreign defendants who commit torts outside of New York that cause harm inside of New York. *See* N.Y. C.P.L.R. § 302(a)(3). To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), Plaintiffs must show that: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person

or property in New York; (4) the defendant expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011) (citation omitted).  All five elements are met here.

The first two elements of jurisdiction under § 302(a)(3)(ii) are clearly demonstrated.  As Plaintiffs have alleged, (1) Defendants have committed tortious acts outside the state and (2) those acts are the basis for Plaintiffs' federal trademark and copyright claims.  *See supra* Part II.

With respect to the third element, Defendants' infringement caused injury in this state.  As set forth in the accompanying declarations, Plaintiff Viacom International, Inc. maintains its headquarters in New York.  Robinson Decl. ¶ 3.  The other Plaintiffs also maintain substantial business operations in New York.  *See* Kaplan Decl. ¶ 4; Kim Decl. ¶ 3; Kang Decl. ¶ 3. Thus, Plaintiffs have suffered injury within New York.  *See Penguin*, 16 N.Y.3d at 301-02 (holding "the situs of injury for purposes of determining long-arm jurisdiction" is the "location of the copyright holder"); *Savage Universal Corp. v. Grazier Constr., Inc.*, No. 04 Civ. 1089 (GEL), 2004 WL 1824102, at *9 (S.D.N.Y. 2004) (Lynch, J.) (holding the situs of injury is where the trademark owner "conducts business"); *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 181 (E.D.N.Y. 2004).

As to the fourth element, Defendants reasonably should have expected that their infringement of Plaintiffs' copyrights and impermissible use of Plaintiffs' Marks would cause injury in New York.  This Court has explicitly held that "[i]t is reasonably foreseeable that the provision of [goods or services] that infringe the copyrights and trademarks of a New York company will have consequences in New York."  *McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005); *see Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000).   Plaintiff Viacom International, Inc. is registered and has its

headquarters in New York—information that is both publicly available and widely known—and the other Plaintiffs have substantial business operations in New York.  Robinson Decl. ¶ 3; *see* Kaplan Decl. ¶ 4; Kim Decl. ¶ 3; Kang Decl. ¶ 3.  Accordingly, Defendants reasonably should have known that their infringing activities would cause harm in New York.  *Cf. Penguin*, 640 F.3d at 500-01 (concluding that fourth element of New York long arm test was met in copyright infringement action brought by New York company against website); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106 (S.D.N.Y. 2015) (concluding in trademark infringement case that "defendants reasonably should have expected [their] actions to have consequences in New York by using the website to attract customers throughout the country and the world").

The fifth element—that defendants derive substantial revenue from interstate commerce—is intended to preclude jurisdiction over non-domiciliaries "whose business operations are of a local character."  *Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (1997) (citation omitted).  There is no question that PubFilm is a global operation, and is not a "local business."  Every video displayed on PubFilm is available to anyone with Internet access—throughout the United States, and throughout the world.  Moreover, Defendants derive revenue from paid advertisements placed on the PubFilm Websites by various online advertising brokers.  Brasich Decl. ¶ 12; *see also id.* ¶¶ 18-19.  Unquestionably, Defendants derive significant revenue from interstate commerce.  *See Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (noting that defendant derived substantial revenue from interstate commerce because it was "a profitable corporation that employs more than 100 people and earns revenue from the sale of internet advertising marketed to 'global brands as well as national and regional advertisers'").

**B.    The Exercise Of Jurisdiction Over Defendants Comports With The Requirements Of Due Process.**

The assertion of personal jurisdiction over Defendants fully comports with due process

because (1) Defendants have "purposefully established 'minimum contacts'" with New York, and (2) the assertion of personal jurisdiction in these circumstances is consistent with "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001)).

As discussed above, Plaintiff Viacom International, Inc. is headquartered in New York City, and all Plaintiffs maintain substantial business operations there. Robinson Decl. ¶ 3; *see* Kaplan Decl. ¶ 4; Kim Decl. ¶ 3; Kang Decl. ¶ 3. Defendants' willful infringement of Plaintiffs' rights by itself satisfies the purposeful availment/minimum contacts requirement. *See Columbia Pictures Television v. Krypton Broad. Of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) (holding that willful infringement satisfies the purposeful availment requirement where defendant knows the owner's principal place of business), *rev'd on other grounds by Feltner v. Columbia Pictures Television, Inc.*, 532 U.S. 340 (1998). Additionally, as noted, Defendants employ DigitalOcean, Inc., a web-hosting company headquartered in New York City, to host at least two websites that are integral to Defendants' unlawful operations. Brasich Decl. ¶¶ 14, 15, 23. Similarly, DoubleClick, the digital advertising supplier that, until recently, Defendants employed to monetize their infringing activities, is also a New York company. *Id.* ¶¶ 12, 23. Defendants' deliberate engagement of New York companies to aid their infringing enterprise also amounts to purposeful availment. *See Arthur Metzler & Assocs. Consulting Eng'rs, P.C. v. Grp. Goetz Architects, P.C.*, No. 01 Civ. 7253 (DC), 2002 WL 764745, at *5 (S.D.N.Y. Apr. 29, 2009) (Chin, J.) (concluding that defendant purposefully availed itself of the benefits of New York law by entering into a contract with a New York company requiring company to perform work in New York).

Compelling defendants to litigate in New York also would not offend traditional notions of fair play and substantial justice.  As noted, defendants offer a video streaming service that is available to users throughout the United States, including in New York, and have even contracted with New York companies for assistance in delivering and monetizing infringing content.  Brasich Decl. ¶¶ 12, 14-15, 23.  Moreover, this Court has recognized that "New York has a substantial interest in protecting the intellectual property rights of copyright and trademark holders." *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 Civ. 7371 (JGK), 2008 WL 2696168, at *9 (S.D.N.Y. July 7, 2008).  It would therefore not be unfair or otherwise anomalous to force Defendants to appear and litigate in New York.

**VII.    Service Of Process By Email Is Warranted In This Case.**

Plaintiffs additionally request permission to serve Defendants by email.  Defendants operate the PubFilm Websites entirely online, apparently from Vietnam, and communicate with the public entirely by electronic means.  *See* Brasich Decl. ¶¶ 24-25, 27-28.  Defendants have gone to great lengths—including the provision of fake names and postal addresses, as well as the use of privacy protection services—to conceal their true identities and postal addresses.  Brasich Decl. ¶ 24.  It would thus be impossible to serve Defendants unless the Court grants Plaintiffs' request to serve Defendants via email.[5]

Under Rule 4(f)(3) of the Federal Rules of Civil Procedure, this Court may authorize service of process on an individual in a foreign country by any means—including email—so long as such service is not prohibited by international agreement with the country where the Defendant

---

[5] Defendants provide the email address of admin@pubfilm.com on both the PubFilm.com and PidTV.com websites, Brasich Decl. ¶ 28, and Plaintiffs have identified several other email addresses associated with Defendants.  *Id.*  If granted leave to do so, Plaintiffs would serve Defendants by all of these known email addresses.

is to be served.  Fed. R. Civ. P. 4(f)(3); *see, e.g.*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d

1007, 1014-19 (9th Cir. 2002) (holding that the only limitations on service under Rule 4(f)(3) are

that such service be "(1) directed by the court; and (2) not prohibited by international agreement").

Thus, courts recognize that "service of process under Rule 4(f)(3) is neither a last resort nor

extraordinary relief.  It is merely one means among several which enables service of process on an

international defendant."  *Rio Props.*, 284 F.3d at 1015 (internal quotation marks and citation

omitted); *see also, e.g.*, *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106,

115 (S.D.N.Y. 2010).  As a result, Rule 4 does not require that a party first attempt service of

process by those methods enumerated in Rule 4(f)(2) before petitioning the Court for permission

to serve process by alternate means under Rule 4(f)(3).  *Rio Props.*, 284 F.3d at 1014-15.

Service of process by email is not prohibited here.  Other courts have permitted service by

email on defendants located in Vietnam.  *See Hydentra Hlp Int. Ltd. v. Porn69.org*, No. CV15-

00451-PHX DGC, 2015 WL 8064770, at *2-3 (D. Ariz. Dec. 7, 2015); *TracFone Wireless, Inc. v.

Bitton*, 278 F.R.D. 687, 693 (S.D. Fla. 2012).  Although Vietnam recently acceded to the Hague

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial

Matters, "[v]arious courts have agreed that service by email is not prohibited by the Hague

Convention."  *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261-62

(S.D. Oh. 2013) (collecting authority).[6]

---

[6] Vietnam has objected to the use of certain alternative methods of service permitted by Article 10 of the Hague Convention, though it has not objected to service by "postal channels."  *See* Status Table, Declarations and Notifications, Vietman, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1337&disp=resdn (last visited Jan. 26, 2017).  Nonetheless, courts have held that email service is a proper method so long as a signatory to the Hague Convention objects only to the particular methods in Article 10, and not to alternative means *not* specifically mentioned there.  *See, e.g., F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *3-4 (S.D.N.Y. Mar. 7, 2013) (permitting service by email and Facebook on defendants in

Like any alternate method of service, service by email must also comport with due process. *Rio Props.*, 284 F.3d at 1016-17; *Phillip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007).   Due process requires that any service of process be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   In similar cases, Courts have found that service by email is "constitutionally acceptable" to satisfy due process.  *See, e.g.*, *Rio Props.*, 284 F.3d at 1017; *Phillip Morris*, 2007 WL 725412, at *2-3; *Hydentra Hlp*, 2015 WL 8064770, at *2-3; *TracFone Wireless*, 278 F.R.D. at 693; *Fisher v. Petr Konchalovsky Found.,* No. 15-cv-9831(AJN), 2016 WL 1047394, at *2-3 (S.D.N.Y. Mar. 10, 2016).

This Court and others have often permitted service of process by email to online businesses, especially in situations where defendants are conducting illicit operations solely via the Internet while concealing their true physical addresses and identities.  *See, e.g.*, *True Religion* TRO, slip op. at 7, 11-13; *NFL* TRO, slip op. at 6, 10-12; *Fujian* TRO, slip op. at 2-4, 7-8; *Arista Records LLC v. Chavez*, No. 1:16-cv-00981-AJN, slip op. at 3, 6-7 (S.D.N.Y. Feb. 10, 2016) (Dkt. No. 28); *Phillip Morris USA*, 2007 WL 725412, at *3; *see also Tishman v. The Associated Press*, No. 05 Civ. 4278 (GEL), 2006 WL 288369, at *2-3 (S.D.N.Y. Feb. 6, 2006) (Lynch, J.).  Indeed, "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process."  *Rio Props.*, 284 F.3d at 1018.  That is precisely the case here.

---

India because those methods are "not among the means listed in Article 10, and India has not specifically objected to them").  Thus, Vietnam's objections do not prohibit the use of email service in this case.

Accordingly, the Court should grant Plaintiffs leave to serve Defendants with the Summons and Complaint via Defendants' email addresses.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court grant their *ex parte* application for a TRO, seizure order, and order to show cause why a preliminary injunction should not issue.   Plaintiffs further request that the Court permit notice of the preliminary injunction hearing and service of the Complaint by alternative means.

DATED:  New York, NY
       February _6_, 2017

Respectfully submitted,

JENNER & BLOCK LLP

By: _____
    Kenneth L. Doroshow (KD-8374)
    1099 New York Ave., N.W.
    Suite 900
    Washington, DC 20001
    Telephone:  (202) 639-6027
    Facsimile:  (202) 639-6066

    Lori B. Day (LD-1197)
    919 Third Avenue
    37th Floor
    New York, NY 10022
    Telephone: (212) 407-1772
    Facsimile: (212) 891-1699

    MOTION PICTURE ASOCIATION OF
    AMERICA, INC.
    Karen R. Thorland (*Pro Hac Vice
    Pending*)
    karen_thorland@mpaa.org
    15301 Ventura Blvd.
    Building E
    Sherman Oaks, CA 91403
    Telephone: (818) 935-5812

    *Attorneys for Plaintiffs*