UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC.; TWENTIETH CENTURY FOX FILM CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; UNIVERSAL CITY STUDIOS LLC; UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC; DISNEY ENTERPRISES, INC.; PARAMOUNT PICTURES CORPORATION; and VIACOM INTERNATIONAL, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> PHAT BUI and DOES 1-10, D/B/A PUBFILM.COM, PUBFILMNO1.COM, PUBFILMHD.COM, PIDTV.COM, TOP100FILM.COM, and IDMCA.NET, <br><br> *Defendants*. | CIVIL ACTION NO. _____ <br><br> **DECLARATION OF BOB BRASICH IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** <br><br> **[FILED UNDER SEAL]** |

I, Bob Brasich, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare and state as follows:

1.  I submit this declaration in support of Plaintiffs Warner Bros. Entertainment Inc., Twentieth Century Fox Film Corporation, Columbia Pictures Industries, Inc., Universal City Studios LLC, Universal Studios Home Entertainment LLC, Disney Enterprises, Inc., Paramount Pictures Corporation, and Viacom International, Inc.'s (collectively, "Plaintiffs") *ex parte* application for a temporary restraining order, seizure order, and order to show cause why a preliminary injunction should not issue. The statements made in this declaration are based on my personal knowledge.

1

2. I am a licensed private investigator employed as the President and Owner of The Internet Investigators, a private investigative firm located in San Diego, California ("Internet Investigators"). Internet Investigators specializes in investigations involving online intellectual property crimes, brand protection investigation and evidence collection services, including website hosting and operation, operator identification, file hosting and streaming analysis, advertising and payment processing analysis and other functions supporting or related to the online operations of individuals and their activity on the Internet. I specialize in investigations involving online intellectual property infringement, including the unlawful distribution and live streaming of copyrighted motion pictures and television programs.

3. Prior to my employment with Internet Investigators in 2014, I conducted Internet investigations for 19 years, employed as a Diversion Investigator with the U.S. Drug Enforcement Administration in San Diego, California and as an Internet Investigations Manager with the Motion Picture Association of America in Sherman Oaks, California.

4. Internet Investigators was retained by Plaintiffs to assist with their investigation into the unauthorized distribution of Plaintiffs' motion pictures and television programs by the website PubFilm.com and affiliated websites and entities. Since April 19, 2016, Internet Investigators has conducted an investigation into these websites and entities.

5. I am familiar with Plaintiffs' motion pictures and television programs as defined in paragraph 15 of the Complaint ("Plaintiffs' Works"), as well as Plaintiffs' trademarks as defined in paragraph 16 of the Complaint ("Plaintiffs' Marks").

## The PubFilm Websites

### A. PubFilm.com

6. PubFilm.com is a website that allows users to stream on demand and directly download unauthorized copies of motion pictures and television programs. The website operates

under the brand name "PubFilm" and the ![PubFilm.Com] logo.  The home page of the PubFilm.com website prominently displays many of the latest and most popular motion pictures and television programs—including the promotional artwork for those motion pictures and television programs—and enables users of the website to stream, view and download copies of those works.  For example, as of December 15, 2016, an excerpt of the home page of the PubFilm.com website appeared as follows:



7.      Users of the PubFilm.com website can easily search the PubFilm website for the content they seek, including by user-friendly categories of genres (*e.g.*, comedy, action, adventure, etc.) that the PubFilm website's operators curate and provide.  Indeed, within the past several weeks, the website's operators added a navigation link for "New Movies In Theaters," allowing users to access unauthorized copies of such motion pictures more easily:



8.      The process of accessing infringing copies of motion pictures and television programs on PubFilm.com is straightforward.  When a user clicks on the thumbnail image of the promotional artwork for a particular motion picture or television program, he or she is taken to another page within the PubFilm.com website that displays a larger-sized image of the promotional artwork (which includes the studio's trademark), along with detailed information about the work, such as plot synopsis, IMDB and Rotten Tomatoes ratings, and information about the principal cast and director.  For example, the following is how the page for the popular feature film "Pete's Dragon" (owned by Plaintiff Disney Enterprises, Inc. and released in August 2016) appears on PubFilm.com, which includes the copyrighted promotional artwork for the film as well as the well-known and registered "Disney" trademark:



**Pete's Dragon**
2016 film

Rating: 7.3/10 (5,736 votes)
IMDb

**Plot Summary**

The adventures of an orphaned boy named Pete and his best friend Elliot, who just so happens to be a dragon.

**Director:** David Lowery
**Running time:** 103 min
**Genre:** Adventure, Family, Fantasy,
**Release date:** 26 August 2016

**Cast**

    

Bryce      Robert    Oakes    Oona       Wes
Dallas     Redford   Fegley   Laurence   Bentley

      9.      The page also provides a button that, when clicked, will commence the streaming of the motion picture or television program through an in-page video player selected and built into the PubFilm.com website by the website's operators, which allows the user to watch the entire work for free.  The in-page video player also includes a button that, when clicked, will initiate the download of an unauthorized copy of the work directly to the user's own computer.

By way of example, the in-page player on the "Pete's Dragon" page of the PubFilm.com website appears as follows, with both the streaming (*i.e.*, "Server 1") and "Download Video" buttons displayed:



10.     Among the works displayed and reproduced on PubFilm.com are a large number of motion pictures and television programs the copyrights and/or exclusive rights to which are owned by Plaintiffs in this action, and detailed in Exhibit A to the Complaint.  Indeed, many of the works that are available on PubFilm.com are still in limited commercial release, such as motion pictures available only in theaters and not yet legally available for streaming online (for example, the hit motion pictures "Fences" and "Passengers"), as well as television programs recently distributed through linear television or legitimate Internet services.  The website even

6

notes whether each copy of Plaintiffs' Works is, for instance, a "Cam" (meaning that the copy was illegally recorded in a movie theater), a "WebRip" (meaning that the copy was illegally captured from a streamed version online), or an "HDRip" (meaning that the copy was illegally ripped from a high-definition source), and provides a hyperlink to a Wikipedia page that lists and explains "Pirated Movie Release Types."  PubFilm.com is a "closed" website—meaning that it does not allow users to upload content or make changes to the content available on the site.  Instead, the operators of PubFilm.com are solely responsible for the content on the site.

11. The quality of the motion picture content available on PubFilm.com is inconsistent.  Particularly for the newest releases that are still in theaters, Defendants often caution their users that the PubFilm.com copy of the motion picture may not be of "high quality," but that "temporarily it is the best version out there."  For example, these disclaimers appear on the PubFilm.com page for the current hit motion picture "Passengers":



Users of the PubFilm Websites frequently complain about the quality of such copies, with observations such as "this copy doesn't have the entire picture" or "I'm seeing people move around and it's not in the movie. It's people in the theater that are getting in the way."

12. The content on PubFilm.com is freely available to anyone who visits the site. The site's operators generate revenue by placing digital advertisements throughout the site and have employed several advertising service providers for this purpose, including DoubleClick (a New York-based company), Matomy Media Group (a company with its US regional headquarters in New York), and Advertising Technologies Limited d.b.a. Propeller Ads.  For example, as of a few months ago, the following banner advertisement appeared on the PubFilm.com page for "Pete's Dragon":



13. The server(s) hosting the website PubFilm.com and their location are concealed by CDN (*i.e.*, content delivery network) servers owned by Sucuri in the United States. However, the digital files containing the infringing motion pictures and television programs available on PubFilm.com are hosted on servers in the United States that are owned by Google as part of its "Google Drive" service. Most, if not all, of these files appear to have been uploaded to Google

Drive by the operators of PubFilm.com. I base this conclusion in part on the fact that each Uniform Resource Locator ("URL") for a given web page is also associated with an Internet Protocol ("IP") address that is assigned to an Internet service provider—in this instance, Sucuri.net, a California-based CDN service with which PubFilm.com's operators have an account. The URL for the digital video files reference the video host, Google Drive, where the uploader of these infringing files has been identified as the same person or entity based on the Google Drive account name. The promotional artwork for each infringing motion picture or television program available on PubFilm.com, however, is served directly to users of PubFilm.com directly from the image hosting servers which are operated by Google's Blogspot service and by the image-sharing platform Imgur.com.

14. The in-page video player for PubFilm.com is hosted on a separate subdomain, Player.Pubfilm.com, and is embedded from that website into the PubFilm.com website. The Player.Pubfilm.com subdomain is itself hosted in two physical locations, one on a server provided by DigitalOcean, Inc. (a web hosting service provider headquartered in New York City) and another on a server provided by Vultr Holdings, LLC via Choopa LLC (an Internet service provider based in Matawan, New Jersey). Since the beginning of our investigation, the video player was served consistently from the DigitalOcean server until early December 2016, when the Choopa server became the primary server for the video player.

**B. PidTV.com**

15. PidTV.com is a duplicate website of PubFilm.com and was launched in mid-August 2016. PidTV.com operates under the brand name "PidTV" and the logo. The PidTV.com website is identical to PubFilm.com in all material respects and functions in exactly the same way. Both sites operate with the same template, hyperlinks, and video

9

players, and retrieve content from the same servers. The in-page video player for PidTV.com is hosted at Player.Pubfilm.com and also at Player.Pidtv.com for some titles, which is a duplicate of Player.PubFilm.com and is located at the same DigitalOcean and Vultr Holdings/Choopa servers as noted above. The hosting location(s) for the PidTV.com website server(s) is concealed by a CDN service operated by CloudFlare, Inc.

### C. The Broader Ring of PubFilm Websites

16.     In addition to being identical copies of one another, PubFilm.com and PidTV.com are part of an interconnected series of websites, including PubFilmno1.com, PubFilmhd.com, Top100film.com and iDMCA.net (collectively, and together with PubFilm.com and PidTV.com, the "PubFilm Websites," the domain names of which are collectively the "PubFilm Domain Names"). Attached as Exhibit A hereto are true and correct copies of the authoritative Whois records for each of the PubFilm Websites.

17.     The PubFilm Websites have directed traffic to one another in an evasive manner that has changed over time. For example, in February 2015, users seeking the PubFilm.com website were redirected automatically to iDMCA.net, which hosted a duplicate copy of Pubfilm.com. A few weeks thereafter, iDMCA.net and PubFilm.com redirected user traffic to Top100film.com, which also hosted a duplicate copy of Pubfilm.com. In early March 2015, PubFilm.com began to redirect its traffic to another copy of the website located on Pubfilmhd.com and then, a few weeks later, to Pubfilmno1.com, which hosted duplicate website content. By the end of April 26, 2015, PubFilm.com once again received traffic and functioned as the primary website of the PubFilm Websites until mid-August 2016, when PidTV.com was launched. At that time, Pubfilm.com and the other PubFilm Websites redirected traffic to PidTV.com. Since that point, the PubFilm Websites have continued to shift their redirection of

traffic in various configurations, leaving PubFilm.com and PidTV.com as the two primary sites of the ring.  The operators of the PubFilm Websites appear to have taken these various redirections to make the PubFilm Websites a moving target in order to evade enforcement efforts by copyright holders, as described below.

18.     The PubFilm Websites collectively draw more than eight million visits each month, nearly forty percent of which are from users located in the United States.  The sites are among the most popular motion picture and television piracy streaming websites in the United States.  The operators of the PubFilm Websites drive this traffic to the PubFilm Websites through various means, including by promoting the PubFilm Websites and their infringing content on their Facebook account and through the use of metadata and keywords designed to maximize the PubFilm Websites' visibility and priority in search results from Internet search engines.  The metadata for the PubFilm Websites include such terms as "Watch movie and TV Show PubFilm HD Free," "watch movies online free full hd" and "watch movie high speed no ads."  The promotion of the PubFilm Websites also includes the use of searchable keywords to describe the infringing content on the PubFilm Websites as "New Movies," in "HD" (*i.e.*, high definition) and "New Series," as well as references to other notorious websites that have been the subject of criminal prosecution for copyright infringement (such as "kickass.to" and "thepiratebay.se") to draw users seeking infringing content to the PubFilm Websites.

19.     Using a computer and an Internet connection in the United States, I accessed infringing copies of Plaintiffs' Works on PubFilm.com and PidTV.com and, in particular, streamed and downloaded from those websites infringing copies of each of Plaintiffs' Works listed in Exhibit A to the Complaint.  Using the same means, I observed that marks identical to or substantially indistinguishable from Plaintiffs' Marks, including those Marks listed in Exhibit B

to the Complaint, were displayed in infringing copies of Plaintiffs' Works or accompanying promotional artwork on PubFilm.com and PidTV.com.

### **Defendants' Efforts to Avoid Detection and Enforcement**

20.     In my experience, the conduct of the operators of the PubFilm Websites is consistent with that of other professional infringers who are dedicated to massive copyright infringement and who go to great lengths to obfuscate their actual identities. As the PubFilm Websites have already shown, the operators of these sites conduct themselves in a manner explicitly designed to preserve the flexibility to move their operations anywhere in the world on short notice, and thereby to frustrate copyright enforcement efforts.

21.     As noted, PubFilm.com was the primary site for the PubFilm Websites for most of the PubFilm Websites' existence. In late July 2016, however, PubFilm.com was the subject of an order from the Malaysian government that required Malaysian Internet service providers to block Malaysian users' access to the site. The Malaysian order was a response to complaints by copyright owners in Malaysia (including affiliates of Plaintiffs in this action) regarding PubFilm.com, which by that time had become one of the most viewed websites in that country.

22.     Immediately following the Malaysian order, the operators of PubFilm.com, on or about August 15, 2016, created a new website called "PidTV.com" and began redirecting traffic from several other PubFilm Websites to the new website. The content on PidTV.com was (and still is) identical to that on PubFilm.com and employed the same video player as PubFilm.com, which was (and still is) hosted at the website player.pubfilm.com, although the video player is also hosted at a duplicate website, player.pidtv.com. Over the past few months, the operators of the PubFilm Websites have treated the PubFilm.com and PidTV.com websites as interchangeable, directing user traffic to and from each of those websites, evidently depending on the focus of enforcement activities with respect to each site at the time. As recently as

October 31, 2016, all of the PubFilm Websites—with the exception of PubFilm.com—automatically redirected user traffic to PidTV.com, which currently functions as Defendants' primary site. Today, only PubFilmNo1.com resolves to PidTV.com, while PubFilm.com still resolves to itself.

23. Defendants have also structured their websites to conceal their infringing activities from their suppliers of digital advertising and its accompanying revenue. For example, as noted, Defendants employed a New York-based advertising service known as "DoubleClick," whose policies expressly provide that "if we receive a notice or otherwise have reason to believe that your site is infringing, we may terminate your participation in the program." To avoid this policy, Defendants created a subdomain on a separate website, "ads.phatbui.us," on which DoubleClick published banner display advertisements. This subdomain shared a hosting server with the PubFilm video player at Digital Ocean in New York. Defendants configured the PubFilm.com and PidTV.com websites to "frame" (*i.e.*, to incorporate visually) those displays from the ads.phatbui.us website, thereby creating the impression from the perspective of a user that the advertisements were in fact displayed on PubFilm.com and PidTV.com. Because DoubleClick interacted only with the primary website Phatbui.us —which itself displayed motion picture trailer content with the advertisements that DoubleClick provided—Defendants could conceal their infringing activities on PubFilm.com and PidTV.com from DoubleClick and thereby avoid potential termination under DoubleClick's policy. On or about November 2, 2016, however, DoubleClick ceased supplying advertisements to the ads.phatbui.us website. On November 28, 2016, Defendants employed a different subdomain —Ads.Fmovie.me—for the same purpose of displaying advertisements that the PubFilm Websites also framed, and

DoubleClick subsequently resumed its services to the PubFilm website.  A few days later, however, DoubleClick once again ceased supplying advertisements to the newly-configured site.

24.     Defendants also go to lengths to conceal their true identities.  For example, as can be seen in the WHOIS records for the PubFilm Websites (*see* Exhibit A appended hereto), the PubFilm Websites are devoid of any identifiable names or real addresses, and Defendants communicate with potential users only through Defendants' social media accounts or email, which bear no connection with their true identities.  The Internet Corporation for Assigned Names and Numbers ("ICANN"), the body that governs domain names, has adopted the Uniform Domain Dispute Resolution Policy (the "ICANN Policy"), which requires each registrant of a domain name to provide complete and accurate information to identify the registrant.  Despite the ICANN Policy, Defendants' WHOIS domain name registrant names and addresses are incomplete or false, containing, for example, nonexistent street addresses.  *See, e.g.,* WHOIS record for PubFilm.com, which provides a supposedly U.S. street address of "38 Le Loi, Jsaui, AL 433455."  In other instances, Defendants' names and addresses are concealed by Defendants' use of a privacy protection service.  As a result of Defendants' deception and concealment, Defendants' true identities and specific locations remain unknown.

25.     Nevertheless, it is still possible to contact Defendants through the electronic means they have provided on the PubFilm Websites and the social media accounts through which they promote the PubFilm Websites.  In particular, the principal owner and operator of the PubFilm Websites is, in my judgment, an individual by the name of Phat Bui (or possibly Bui Phat) who resides somewhere in Vietnam, and who maintains several social media accounts with contact information that bears no connection with their true identities.  My conclusion that Phat Bui is the owner and operator of the PubFilm Websites is based on my extensive investigation of

historical domain registration, HTML data on the PubFilm Websites and elsewhere, social media profiles and posts on forum websites.

26. For example, an "author/publisher" link to a Google Plus profile appeared in the HTML code of the movie.pubfilmno1.com and TV.pubfilmhd.com websites, as well as in archives of the PubFilm.com website, which link I have also observed in several Google blogs, including Top100pubfilm.blogspot.com, among others. The Google Plus profile found in each such instance of the link is held in the name of "Bui Phat" and identifies this individual as an "uploader" and the "Admin" of PubFilm.com. The profile also claims that this individual attended "QN University" and goes by the alternative name "Mr. White."

27. Similarly, PubFilm.com and PidTV.com share a unique Facebook admin metatag that represents the Facebook ID of a profile held in the name of "Phat Bui" of Quy Nhon, Vietnam. This same Facebook profile is also mentioned in a YouTube channel associated with the Google Plus profile discussed above.

28. The PubFilm Websites also have several email addresses associated with them. For example, the PubFilm.com and PidTV.com websites both provide an email address of [admin@pubfilm.com](admin@pubfilm.com) at the bottom of their homepages. In addition, as shown in Exhibit A hereto, the email address [mrwhit321@gmail.com](mrwhit321@gmail.com) appears as the registrant and admin contact for the iDMCA.net and PubFilm.com domain name registrations, as well as the Phatbui.us domain used to host the DoubleClick advertisements. The email address [sand_pox@yahoo.com](sand_pox@yahoo.com) appears as the registrant and admin contact for the PubFilmHD.com, PubFilmNo1.com and Top100Film.com website domain name registrations. Based on my experience with similar piratical practices, I am confident that an email message sent to these addresses will reach the

15

owners and operators of the PubFilm Websites, and that these are the best (and probably only) means available for communicating with the Defendants.

29. All of the PubFilm Websites have domain names that are within either the ".com" or ".net" top-level domains, both of which are within the control of the domain registry VeriSign, Inc., located in Herndon, Virginia. The PubFilm.com and PidTV.com domain names are registered through the domain name registrars Enom, Inc. and GoDaddy.com, LLC, respectively.

30. Based on my extensive experience in similar circumstances, I am confident that the owners and operators of the PubFilm Websites would, if given advance notice of this lawsuit, respond quickly by disappearing or by moving all of their operations abroad. For example, these Defendants could change the PubFilm Websites' domain names from their current U.S.-based ".com" and ".net" domains to domain names administered by non-U.S. registries. Similarly, they could register their domain names with non-U.S. registrars, beyond the jurisdiction of this court, and could move their ads.phatbui.us and player.pubfilm.com websites from their current host servers with DigitalOcean, Inc. in New York to a hosting provider abroad.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2017 at San Diego, California.

_____
Bob Brasich