**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC.; TWENTIETH CENTURY FOX FILM CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; UNIVERSAL CITY STUDIOS LLC; UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC; DISNEY ENTERPRISES, INC.; PARAMOUNT PICTURES CORPORATION; and VIACOM INTERNATIONAL, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> PHAT BUI and DOES 1-10, D/B/A PUBFILM.COM, PUBFILMNO1.COM, PUBFILMHD.COM, PIDTV.COM, TOP100FILM.COM, and IDMCA.NET, <br><br> *Defendants.* | CIV. A.  NO. 17-CV-875 (VM) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**APPLICATION FOR DEFAULT JUDGMENT**
**AND PERMANENT INJUNCTION**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND...................................................................................................3

I.  The Parties ........................................................................................................................3

    A.  Plaintiffs ..............................................................................................................3

    B.  Defendants ...........................................................................................................3

II.  The PubFilm Websites........................................................................................................4

III.  Procedural History ...........................................................................................................7

ARGUMENT ...........................................................................................................................12

I.  The Entry of a Default Judgment Is Warranted ................................................................12

II.  Defendants Are Liable for Copyright Infringement........................................................12

    A.  Defendants Are Liable for Direct Copyright Infringement..............................12

    B.  Defendants Are Liable for Secondary Copyright Infringement.......................14

III.  Defendants Are Liable for Trademark Infringement and Unfair Competition and False Designation of Origin. ...................................................................17

IV.  Plaintiffs Are Entitled to a Maximum Award of Statutory Damages for Copyright Infringement. ...................................................................................19

V.  Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs. ...............................21

VI.  Plaintiffs Are Entitled to a Permanent Injunction...........................................................22

    A.  The Court Has the Authority To Issue a Permanent Injunction.....................22

    B.  Plaintiffs Meet the Requirements for Injunctive Relief. ...................................22

CONCLUSION .......................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

C<span style="font-size:smaller">ASES</span>

*A & M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................................................14

*Am. Broad. Cos. v. Aereo, Inc.*,
  134 S. Ct. 2498 (2014).........................................................................................................14

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010).........................................................................................13, 16

*Arista Records LLC v. Lime Grp. LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011)..................................................................................15

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)............................................................................14, 15

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
  58 F.3d 849 (2d Cir. 1995)..................................................................................................22

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.*
  *Moulton Masonry & Const., LLC*,
  779 F.3d 182 (2d Cir. 2015)................................................................................................12

*Bridgeport Music, Inc. v. WB Music Corp.*,
  520 F.3d 588 (6th Cir. 2008) ..............................................................................................21

*Capitol Records, LLC, d/b/a EMI Music North Am. v. Escape Media Grp., Inc.*,
  No. 12-CV-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ....................13, 15, 16

*Capitol Records, LLC v. ReDigi Inc.*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013)..................................................................................14

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
  No. CV 15-01869 MMM, 2015 WL 3469187 (C.D. Cal. June 11, 2015)..............................23

*Chloe v. Zarafshan*,
  No. 1:06-cv-3140-RJH-MHD, 2009 WL 2956827 (S.D.N.Y. Sept. 15, 2009) ......................19

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ............................................................................................14

*Compaq Comput. Corp. v. Ergonome Inc.*,
  387 F.3d 403 (5th Cir. 2004) ..............................................................................................21

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
No. 08-cv-7497, 2014 WL 1883474 (S.D.N.Y. May 9, 2014) ..........................................23, 24

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ....................................................................................23, 24

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
806 F.2d 392 (2d Cir. 1986)..............................................................................................18

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) ..........................................................................................15

*Entral Grp. Int'l v. Sun Sports Bar Inc.*,
No. 05-cv-4836 (CBA), 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007) ................................20

*Fallaci v. New Gazette Literary Corp.*,
568 F. Supp. 1172 (S.D.N.Y. 1983).................................................................................19

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
696 F. Supp. 2d 368 (S.D.N.Y. 2010)..........................................................................18, 24

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971)............................................................................................16

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
826 F. Supp. 2d 619 (S.D.N.Y. 2011)...........................................................................21, 22

*In Design v. Lauren Knitwear Corp.*,
782 F. Supp. 824 (S.D.N.Y. 1991)....................................................................................21

*Kepner-Tregoe, Inc. v. Vroom*,
186 F.3d 283 (2d Cir. 1999)..........................................................................................20, 21

*Kroll-O'Gara Co. v. First Def. Int'l, Inc.*,
No. 99 Civ. 4899 (SAS), 2000 WL 369721 (S.D.N.Y. Apr. 11, 2000)..................................21

*Lava Records LLC v. Ates*,
No. Civ.A. 05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006) ......................................25

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
799 F.2d 867 (2d Cir. 1986)..............................................................................................19

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
378 F. Supp. 2d 448 (S.D.N.Y. 2005)...........................................................................18, 24

*Manno v. Tenn. Prod. Ctr., Inc.*,
657 F. Supp. 2d 425 (S.D.N.Y. 2009)...............................................................................21

*Marks Org., Inc. v. Joles*,
784 F. Supp. 2d 322 (S.D.N.Y. 2011)................................................................................24

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..................................................................................................14, 15

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
131 F. Supp. 2d 458 (S.D.N.Y. 2001)..................................................................................20

*NML Capital, Ltd. v. Republic of Arg.*,
699 F.3d 246 (2d Cir. 2012)..................................................................................................25

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*,
816 F.2d 68 (2d Cir. 1987)..................................................................................................18

*Otokoyama Co. v. Wine of Japan Imp., Inc.*,
175 F.3d 266 (2d Cir. 1999)..................................................................................................17

*Phillip Morris USA Inc. v. A & V Minimarket, Inc.*,
592 F. Supp. 2d 669 (S.D.N.Y. 2009)..................................................................................12

*RC Entm't, Inc. v. Rodriguez*,
No. 98 Civ. 8585 (BSJ), 1999 WL 777903 (S.D.N.Y. Sept. 29, 1999)...................................21

*RSO Records, Inc. v. Peri*,
596 F. Supp. 849 (S.D.N.Y. 1984)..................................................................................20

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)..................................................................................................23

*Scarves by Vera, Inc. v. Todo Imports Ltd.*,
544 F.2d 1167 (2d Cir. 1976)..................................................................................................25

*Shell Oil Co. v. Commercial Petroleum, Inc.*,
928 F.2d 104 (4th Cir. 1991) ..................................................................................................18

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*,
74 F.3d 488 (4th Cir. 1996) ..................................................................................................20

*Tiffany (NJ) Inc. v. Luban*,
282 F. Supp. 2d 123 (S.D.N.Y. 2003)..................................................................................21

*Time, Inc. v. Petersen Publ'g Co.*,
173 F.3d 113 (2d Cir. 1999)..................................................................................................19

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
800 F. Supp. 2d 515 (S.D.N.Y. 2011)..................................................................................24

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*,
No. 04 Civ. 6189 (JFK), 2008 WL 3906889 (S.D.N.Y. Aug. 21, 2008)...........................21, 22

*UMG Recording, Inc. v. Escape Media Grp., Inc.*,
No. 11 Civ. 8407, 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014)......................................13, 14

*Van Der Zee v. Greenidge*,
    No. 03 Civ. 8659 (RLE), 2006 WL 44020 (S.D.N.Y. Jan. 6, 2006)........................................19

*Van Praagh v. Gratton*,
    993 F. Supp. 2d 293 (E.D.N.Y. 2014) ................................................................19

*Warner Bros. Entm't Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008)................................................................24

*Warner Bros. Entm't v. Caridi*,
    346 F. Supp. 2d 1068 (C.D. Cal. 2004) ................................................................21

## STATUTES

15 U.S.C. § 1065 ................................................................................................3

15 U.S.C. § 1114 ..............................................................................................17

15 U.S.C. § 1116 ........................................................................................12, 22

15 U.S.C. § 1117 ..........................................................................................2, 22

15 U.S.C. § 1121 ..............................................................................................12

17 U.S.C. § 106 ................................................................................................13

17 U.S.C. § 502 ........................................................................................12, 22

17 U.S.C. § 504 ..........................................................................................2, 19

17 U.S.C. § 505 ..........................................................................................2, 21

28 U.S.C. § 1331 ..............................................................................................12

28 U.S.C. § 1332 ..............................................................................................12

28 U.S.C. § 1338 ..............................................................................................12

N.Y. C.P.L.R. § 302 ........................................................................................12

## FEDERAL RULES

Fed. R. Civ. P. 4 ..............................................................................................12

Fed. R. Civ. P. 65 ............................................................................................25

Plaintiffs Warner Bros. Entertainment Inc.; Twentieth Century Fox Film Corporation; Columbia Pictures Industries, Inc.; Universal City Studios LLC; Universal Studios Home Entertainment LLC; Disney Enterprises, Inc.; Paramount Pictures Corporation; and Viacom International, Inc. (collectively "Plaintiffs") hereby submit this Memorandum of Law in Support of Application for Default Judgment and Permanent Injunction against Defendants Phat Bui and Does 1-10, d/b/a PubFilm.com, PubFilmNo1.com, PubFilmHD.com, PidTV.com, Top100film.com, and iDMCA.net (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants are Internet pirates who own, operate, and promote a ring of interconnected websites under the name "PubFilm" and variants thereof (hereinafter, and as further defined below, the "PubFilm Websites") whose purpose is to profit from the infringement of copyrighted works. Through these websites, Defendants have illegally reproduced, streamed, distributed, displayed and facilitated the further reproduction and distribution of vast numbers of unauthorized copies of many of the world's most popular motion pictures and television programs, including works whose copyrights Plaintiffs own or exclusively control and which bear Plaintiffs' famous and highly-distinctive trademarks.

The PubFilm Websites prominently feature and promote for on-demand streaming and download a collection of popular motion pictures that are licensed for viewing only in theaters, and television shows still in current first-run release.  Defendants identify and curate these infringing works by the particular piracy method by which each unauthorized copy was made, such as "Cam" (meaning that the copy was illegally recorded in a movie theater), "WebRip" (meaning that the copy was illegally captured from a streamed version online), or "HDRip" (meaning that the copy was illegally ripped from a high-definition source).

1

The scale of Defendants' infringement is massive.  At the time the Complaint was filed, the PubFilm Websites collectively drew more than eight million visits per month, nearly forty percent of which were from users located in the United States.  Defendants' illegal enterprise has inflicted tremendous and irreparable damage on Plaintiffs' business and eroded the legitimate marketplace for access to Plaintiffs' motion pictures and television programs.

Defendants profit from their operation of the PubFilm Websites by displaying advertisements on the websites.  Through the unauthorized distribution and/or public performance of free, popular motion pictures and television programs, Defendants are able to attract millions of users to the PubFilm Websites and thereby generate substantial ill-gotten advertising revenues.  Plaintiffs initiated this action on February 6, 2017, to stop Defendants' brazen and massive infringement and to recover damages therefrom.  Defendants have failed to answer the Complaint or otherwise participate in this case in any manner.

Defendants are now in default and all of the requirements for entry of default judgment have been satisfied.  The Clerk of the Court has entered a default against Defendants.  Dkt. No. 58.  Accordingly, Plaintiffs now seek a final judgment based on the well-pleaded allegations of their Complaint that Defendants are liable for willful copyright infringement, trademark infringement, false designation of origin, and unfair competition.  Plaintiffs seek an award of maximum statutory damages under the Copyright Act for willful infringement of their copyrights under 17 U.S.C. § 504(c).  Plaintiffs further seek a permanent injunction prohibiting Defendants from operating the PubFilm Websites and infringing Plaintiffs' copyrighted works and trademarks.  Finally, Plaintiffs seek an award of attorneys' fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117, in an amount to be proven in a subsequent submission.

## FACTUAL BACKGROUND

I.     **The Parties**

    A.     **Plaintiffs**

Plaintiffs are businesses that, either directly or through their affiliates, are responsible for creating and distributing some of the most popular and critically-acclaimed motion pictures and television shows in the world.  Complaint ("Compl.") ¶ 12, Dkt. No. 16.  Plaintiffs own or control the copyrights and/or exclusive rights to reproduction, distribution, and performance of numerous popular motion pictures and television programs infringed by Defendants ("Plaintiffs' Works"). *Id.* ¶ 15.  An illustrative list of Plaintiffs' federally copyrighted motion pictures and television shows that Defendants have illegally reproduced, distributed, displayed, and/or performed is attached as Exhibit A to the Complaint.  *Id.* ¶ 15; *id.*, Ex. A, Dkt. No. 16-1.  Each Plaintiff has received Certificates of Copyright Registration from the Register of Copyrights for these copyrighted Works.  Compl. ¶ 15.

Additionally, Plaintiffs own the entire right, title, and interest in and to certain valid and subsisting trademarks, service marks, and/or design marks ("Plaintiffs' Marks"), many of which have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, for use in connection with various types of goods and services, including the types of goods and services that are the subject of this action.  *Id.* ¶ 16.  An illustrative list of Plaintiffs' Marks that Defendants have infringed is set forth in Exhibit B to the Complaint.  *Id.* ¶ 16; *id.*, Ex. B, Dkt. No. 16-2.

    B.     **Defendants**

Defendants own and operate several interrelated websites, including those resolving at PUBFILM.AC,     PUBFILM.CC,     PUBFILM.COM,     PUBFILM.EU,     PUBFILM.IS, PUBFILM.NET, PUBFILM.RU, PUBFILM.SU, PUBFILMNO1.COM, PUBFILMHD.COM, PUB77.COM, PIDTV.COM, TOP100FILM.COM, and IDMCA.NET, as well as the websites

3

located at the Internet Protocol ("IP") addresses 81.17.21.18 and 95.215.46.191 and currently resolving at the domain names PUBFILM.IS, PUBFILM.EU, PUBFILM.RU and PUBFILM.SU (collectively, the "PubFilm Websites").  Compl. ¶ 25; Declaration of Kenneth L. Doroshow in Support of Plaintiffs' Application for Default Judgment and Permanent Injunction ("Doroshow Default Decl.") ¶¶ 2, 17; Supplemental Declaration of Bob Brasich ("Brasich Supp. Decl.") ¶¶ 4-8, Dkt. No. 38; Second Supplemental Declaration of Bob Brasich ("Brasich Second Supp. Decl.") ¶¶ 2-8, Dkt. No. 43; Errata to the Second Supplemental Declaration of Bob Brasich ("Brasich Errata") ¶ 3, Dkt. No. 47; *see also* March 7, 2017 Corrected Order at 2, Dkt. No. 52.

Defendants reside and operate the PubFilm Websites from outside the United States, specifically in Vietnam.  Compl. ¶ 27; *see* Declaration of Bob Brasich in Support of Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Seizure Order, and Order to Show Cause for Preliminary Injunction ("Brasich TRO Decl.") ¶¶ 25-27, Dkt. No. 24.  Defendants go to lengths to conceal their true identities.  *See* Brasich TRO Decl. ¶ 22.

## II.     The PubFilm Websites

Defendants operate and control the PubFilm Websites under the brand name "PubFilm" and the logo.  Compl. ¶ 28.  The PubFilm Websites provide on-demand streaming performances of infringing copies of Plaintiffs' Works and allow users to download unauthorized copies of those Works.  *Id.* ¶ 29.  The PubFilm Websites allow users to access the infringing copies of Plaintiffs' Works through links to computer servers on which those infringing copies are hosted. *Id.* ¶ 30.  Defendants uploaded most, if not all, of the infringing copies of Plaintiffs' Works that are available on those computer servers.  *Id.*

The infringing nature of the PubFilm Websites' offerings is obvious from even a cursory glance.  *Id.* ¶ 31.  For instance, the home page of the PubFilm.com website prominently displays

some of the latest and most popular motion pictures—including unauthorized copies of promotional artworks for those motion pictures, which are themselves copyrighted works and contain Plaintiffs' well-known and registered trademarks—on offer for streaming and download by users. *Id*.

With a simple click on the corresponding promotional artwork, users of the PubFilm Websites can view unauthorized copies of Plaintiffs' Works and, using an in-page video player that Defendants built into the PubFilm Websites, can also download unauthorized copies of the Plaintiffs' Works directly to their own computers. *Id.* ¶ 32. Users can easily search the PubFilm Websites for the content they seek, including by user-friendly categories of genres (*e.g.*, comedy, action, adventure, etc.) that Defendants curate and provide. *Id.*

The process of accessing infringing copies of Plaintiffs' Works on the PubFilm Websites is straightforward: When a user clicks on the promotional artwork for a particular motion picture or television program, he or she is directed to another webpage that displays a large-size copy of Plaintiffs' copyrighted promotional artwork, along with detailed information about the work such as a plot synopsis, IMDB and Rotten Tomatoes ratings, and information about the principal cast and director. Brasich TRO Decl. ¶ 8; *see* Compl. ¶ 32. That page also provides a button that, when clicked, will commence the streaming of the work through an in-page video player selected and built into the website by Defendants, which allows the user to watch the entire work for free. Brasich TRO Decl. ¶ 9. Using the PubFilm in-page video player (which includes both streaming and "Download Video" buttons), the user may also download an unauthorized copy of the work directly to his or her own computer. *Id.*

Among the works displayed and reproduced by Defendants are a large number of motion pictures and television programs owned by Plaintiffs, and detailed in Exhibit A to the Complaint,

and related promotional artwork.  *See id.* ¶ 10; Declaration of Kenneth L. Doroshow in Support of Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Seizure Order, and Order to Show Cause for Preliminary Injunction ("Doroshow TRO Decl.") ¶¶ 3, 6, Dkt. No. 23.  Plaintiffs have not authorized Defendants to perform, reproduce, distribute, display or otherwise exploit Plaintiffs' Works in any way.  Compl. ¶ 33.  Indeed, many of Plaintiffs' Works that Defendants provide to users on the PubFilm Websites are still in limited theatrical release, such as movies available only in theaters and not yet available via authorized licenses for streaming online.  *Id.* Moreover, Defendants note prominently on the promotional artworks for the Works whether each copy is, for instance, a "Cam" (a copy illegally recorded in a movie theater), "HDRip" (a copy illegally ripped from a protected high-definition source) or "WebRip" (a copy illegally made from a streamed version online).  *Id.*  Each instance of Plaintiffs' Works is accompanied by the unauthorized display of Plaintiffs' Marks.  Brasich TRO Decl. ¶ 8; *see* Compl. ¶¶ 31-32.

The PubFilm Websites are "closed" websites that do not allow users to make additions or changes to the PubFilm Websites or the content available through them.  Compl. ¶ 34.  In other words, Defendants are solely responsible for the content on the PubFilm Websites and the selection of Plaintiffs' Works that can be streamed or downloaded through the PubFilm Websites.  *Id.*

Content on the PubFilm Websites is freely available to anyone who visits the sites.  *Id.* ¶ 12. Defendants generate revenue by displaying digital advertisements throughout the PubFilm Websites.  *Id.* ¶ 35.  To increase advertising revenue, Defendants drive visitor traffic to the PubFilm Websites through various methods.  *Id.*  For example, Defendants use metadata and keywords designed to maximize the PubFilm Websites' visibility and priority in search results from Internet search engines.  *Id.*  The metadata for the PubFilm Websites include such terms as "Watch movie and TV Show PubFilm HD Free," "watch movies online free full hd" and "watch movie high speed

no ads." *Id.*  Defendants' promotion also includes the use of searchable keywords to describe the infringing content on the PubFilm Websites as "New Movies," in "HD" (*i.e.*, high definition) and "New Series," as well as references to other notorious websites that have been the subject of criminal prosecution (such as "kickass.to" and "thepiratebay.se") to draw users seeking infringing content to the PubFilm Websites.  *Id.*  At the time the Complaint was filed, the PubFilm Websites collectively drew more than eight million visits each month, nearly forty percent of which were from users in the United States, making the sites among the most popular motion picture and television piracy streaming websites in the United States.  Brasich TRO Decl. ¶ 18.

## III.   Procedural History

On February 6, 2017, Plaintiffs filed their Complaint under seal along with an *ex parte* application for a Temporary Restraining Order, a seizure order, and an order to show cause for a preliminary injunction against Defendants.  *See* Dkts. 16, 21-32.  The next day, this Court granted Plaintiffs' motion and entered the Temporary Restraining Order, enjoining Defendants and all persons in active concert or participation with Defendants from infringing Plaintiffs' copyrights and trademarks (hereinafter "TRO").  Doroshow Default Decl. ¶ 3; *see* TRO, Dkt. No. 27.  At that time, the PubFilm Websites were located at PUBFILM.COM, PUBFILMNO1.COM, PUBFILMHD.COM, PIDTV.COM, TOP100FILM.COM, and IDMCA.NET.  *See* Compl. ¶ 6; Brasich TRO Decl. ¶¶ 1, 15-16, 22; Doroshow Default Decl. ¶ 3.  The TRO required that all domain name registries and registrars for each of those domains disable the PubFilm Domain Names and prevent their transfer to anyone other than Plaintiffs.  TRO at 2, 5; Doroshow Default Decl. ¶ 3.

Plaintiffs received notice that the TRO had been issued on February 13, 2017.  Doroshow Default Decl. ¶ 4; *see* Dkt. No. 40 ¶ 2.  Plaintiffs served a domain registry and two domain name registrars with a copy of the TRO that day.  Doroshow Default Decl. ¶ 4; *see* Dkt. No. 40 ¶ 2. These entities promptly complied with the TRO and placed domain locks on the then-operative

PubFilm domain names, the effect of which was to disable access to the PubFilm Websites at those domain names.  Doroshow Default Decl. ¶ 4; *see* Dkt. No. 40 ¶¶ 2-4; Supp. Brasich Decl. ¶ 3.

On February 15, 2017, upon confirming that the domain locks were effective, Plaintiffs served Defendants with a copy of the TRO, as well as the Summons and Complaint, by email, pursuant to the TRO.  Doroshow Default Decl. ¶ 5; *see* Dkt. No. 40; Brasich Supp. Decl. ¶ 3.  Proof of Service was filed on February 22, 2017.  Doroshow Default Decl. ¶ 5; *see* Dkt. No. 40 ¶ 4. Defendants failed to file any response thereto or otherwise appear in the action.  Doroshow Default Decl. ¶ 6.

Defendants also openly flouted the TRO.  Within hours after the domain names were disabled, Defendants began to reconstruct the PubFilm website for hosting on two new domain names, PUBFILM.CC and PUBFILM.NET, and then moved the PubFilm site to those new domain names, with the same infringing content previously made available at PUBFILM.COM and PIDTV.COM.  Doroshow Default Decl. ¶ 6; Brasich Supp. Decl. ¶¶ 4-7; *see also* Dkt. No. 42 ¶ 2. Defendants announced that PUBFILM.COM would be moving to PUBFILM.CC and asked users to share the new domain name with others.  Specifically, Defendants' Facebook page stated that "PUBFILM.COM is moving on to PUBFILM.CC, some new movies/tv shows will be update [sic] soon, please like and share this new domain and page to all people."  Brasich Supp. Decl. ¶ 5.

On February 17, 2017, this Court held a hearing on the order to show cause for preliminary injunction.  Despite having been served with the TRO, Defendants failed to appear for the hearing. Doroshow Default Decl. ¶ 7; *see* February 17, 2017 Order ("Preliminary Injunction" or "Prelim. Inj.") at 1, Dkt. No. 39; Dkt. No. 42 ¶ 2.  The Court converted the TRO to a Preliminary Injunction, and expanded the definition of the "PubFilm Websites" and "PubFilm Domain Names" therein to also include PUBFILM.CC and PUBFILM.NET, the domain names to which Defendants had

moved their infringing operations.  Doroshow Default Decl. ¶ 7; *see* Prelim. Inj.

Immediately upon receipt of the Court's Preliminary Injunction, Plaintiffs served a copy of the Preliminary Injunction on VeriSign, Inc., the domain registry for the ".cc" and ".net" domains.  Doroshow Default Decl. ¶ 8; Second Supp. Brasich Decl. ¶ 4, Dkt. 43.  VeriSign complied with the Preliminary Injunction and implemented a registry lock on the PUBFILM.CC and PUBFILM.NET domain names, the effect of which was to disable access to the PubFilm Websites at those additional domain names as well.  Doroshow Default Decl. ¶ 8; Second Supp. Brasich Decl. ¶ 4, Dkt. 43.  On February 24, 2017, after confirming the effectiveness of VeriSign's registry lock, Plaintiffs served Defendants by email with a copy of the Preliminary Injunction. Doroshow Default Decl. ¶ 9.

In direct response to the disabling of the PUBFILM.CC and PUBFILM.NET domain names, Defendants again moved their unlawful operations to new locations using newly-registered domain names PUBFILM.AC and PUBFILM.IS.  Doroshow Default Decl. ¶ 10; Second Supp. Brasich Decl. ¶¶ 6-8.  Defendants also assigned new domain and sub-domain names (PLAYER.PUB77.COM, PUB77.COM, PLAYER.PUBFILM.AC) to the websites that host the in-page video player that allows users of the PubFilm Websites to view and download unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows.  Doroshow Default Decl. ¶ 10; Second Supp. Brasich Decl. ¶¶ 6-8.  Defendants actively sought to drive traffic to the new locations for their unlawful operations.  For example, on February 21, 2017, following the placement of a registry lock on the PUBFILM.CC and PUBFILM.NET domain names, Defendants posted on their Facebook page that "Pubfilm.cc was taken down.  We have moved to pubfilm.is domain.  Sorry about that," and subsequently posted that "Pubfilm have [sic] changed to a new domain is [sic] pubfilm.ac or pubfilm.is.  Sorry about that.  Thanks for your patience."

Second Supp. Brasich Decl. ¶¶ 4-6.

Plaintiffs submitted evidence of Defendants' ongoing operations in violation of this Court's Orders, and requested that the Court amend the definition of the "PubFilm Websites" set forth in the Preliminary Injunction to include (in addition to all previously-identified websites) PUBFILM.AC, PUBFILM.IS, PUB77.COM, and the websites located at two Internet Protocol ("IP") addresses and resolving at that time at the domain names PUB77.COM, PLAYER.PUB77.COM, and PLAYER.PUBFILM.AC. Doroshow Default Decl. ¶ 11; *see* Plaintiffs' *Ex Parte* Application for an Order Amending the Prelim. Inj. To Include Defendants' New Domain Names, Dkt. No. 41; Second Supp. Brasich Decl., Exs. A-D.[1] On February 28, 2017, this Court issued an Order amending the definition accordingly, directing service upon Defendants by email, and ordering that the case be unsealed five business days following the filing of Proof of Service (the "February 28 Order"). Doroshow Default Decl. ¶ 11; February 28 Order at 1, 4, Dkt. No. 44.

On February 28, 2017, immediately upon receiving a copy of the February 28 Order, Plaintiffs served that Order on the webhosting companies responsible for hosting Defendants' PLAYER.PUB77.COM website, namely: DigitalOcean, Inc. ("DigitalOcean"), and Vultr Holdings LLC via Choopa, LLC ("Vultr/Choopa"). Doroshow Default Decl. ¶ 12; Dkt. No. 46 ¶ 2.[2] On March 6, 2017, Plaintiffs served the February 28 Order on VeriSign and Namecheap Inc., the domain name registrar for PUB77.COM and PLAYER.PUB77.COM. Dkt. No. 46 ¶ 2; Second Supp. Brasich Decl. ¶ 8. Namecheap and VeriSign suspended and placed a registry lock on the

---

[1] Exhibits A-D to the Second Supplemental Brasich Declaration can be found on the Court's docket at Dkt. Nos. 38-1 to 38-4, even though they were filed to accompany the declaration docketed at Dkt. No. 43.
[2] At the direction of an employee of Vultr Holdings LLC via a telephone call placed on March 2, 2017 in an effort to reach a point of contact, Plaintiffs again served the February 28 Order on Vultr/Choopa by email, on March 2, 2017. Doroshow Default Decl. ¶ 12; Dkt. 46 ¶ 2.

PUB77.COM domain name.  Doroshow Default Decl. ¶ 12; Dkt. No. 46 ¶ 3.  On or around March 7, 2017, Vultr/Choopa ceased providing services to Defendants and, on March 16, 2017, DigitalOcean did the same, disrupting the video player.  Doroshow Default Decl. ¶ 12.

On March 6, 2017, following Namecheap and VeriSign's confirmation of their compliance with the February 28 Order, Plaintiffs served the February 28 Order on Defendants by email.  Doroshow Default Decl. ¶ 13; Dkt. No. 46 ¶ 4.  Proof of Service was filed on March 7, 2017.  Doroshow Default Decl. ¶ 13; *see* Dkt. No. 46.  Plaintiffs received no response.  Doroshow Default Decl. ¶ 13.  On March 7, 2017, this Court entered a Corrected Order, correcting a typographical error in the February 28 Order.  Doroshow Default Decl. ¶ 14; *see* March 7 Corrected Order, Dkt. No. 52.  The next day, Plaintiffs served a copy of the March 7 Corrected Order on Defendants by email.  Doroshow Default Decl. ¶ 15.  The Court ordered the case unsealed on March 9, 2017.  *See* Dkt. No. 13.

In the months that followed, Defendants moved their websites to still other domain names, including PUBFILM.IO, PUBFILM.EU, PUBFILM.RU, and PUBFILM.SU.  Doroshow Default Decl. ¶ 17.  After Plaintiffs' outreach to various third parties responsible for the administration of services to the PubFilm Websites, the domain registry for the ".io" domain suspended the PUBFILM.IO domain name, and certain providers of DNS and proxy services to the PUBFILM.AC website terminated their services, the effect of which was to disable access to the PubFilm Websites at the PUBFILM.IO and PUBFILM.AC domain names.  *Id.* ¶ 17.  As of today, the Defendants continue to operate their infringing PubFilm Websites through the domain names PUBFILM.IS, PUBFILM.EU, PUBFILM.RU and PUBFILM.SU, as well as through the websites located at the Internet Protocol ("IP") addresses 81.17.21.18 and 95.215.46.191 and currently resolving at those same domain names.  *Id.* ¶ 17.

On December 22, 2017, the Clerk of Court entered a Certificate of Default against Defendants.  Doroshow Default Decl. ¶ 19; *see* Dkt. No. 58.  To date, Defendants have failed to submit any answering papers in this action.  Doroshow Default Decl. ¶ 18.  Defendants are, therefore, in default.  *Id.*

## ARGUMENT

### I.      The Entry of a Default Judgment Is Warranted.

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a default judgment may be entered against a defendant who never appears or answers a complaint.  *See Phillip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 672 (S.D.N.Y. 2009).  Furthermore, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015); *see also Phillip Morris*, 592 F. Supp. 2d at 672. In this case, the Complaint, pleadings, and declarations filed clearly demonstrate that a default judgment should be entered against Defendants.[3]

### II.      Defendants Are Liable for Copyright Infringement.

#### A.      Defendants Are Liable for Direct Copyright Infringement.

To establish copyright infringement, a plaintiff must show only two elements: "(1)

---

[3]  Jurisdiction for a default judgment is proper here.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1311, 1332, and 1338(a) and (b), and 15 U.S.C. §§ 1116 and 1121, and 17 U.S.C. § 502.  Compl. ¶¶ 8, 42, 54.  Moreover, as the allegations in the Complaint establish, there are multiple bases for this Court's exercise of personal jurisdiction over Defendants.  First, the Court has jurisdiction over Defendants because: (1) Defendants transacted business in New York with a website hosting company headquartered in New York, and (2) the cause of action arises from that business transaction.  *See id.* ¶ 9; TRO Mem. at 31-32; N.Y. C.P.L.R. § 302(a)(1).  Second, the Court has personal jurisdiction over Defendants because: (1) Defendants committed tortious acts outside New York; (2) the cause of action arose from those acts; (3) the tortious acts caused an injury to a person or property in New York; (4) Defendants expected or should have reasonably expected the acts to have consequences in New York; and (5) Defendants derived substantial revenue from interstate or international commerce.  *See* Compl. ¶ 9; TRO Mem. at 32-34; N.Y. C.P.L.R. § 302(a)(3)(ii).  *See also* Compl. ¶ 10 (alleging jurisdiction under Fed. R. Civ. P. 4(k)(2)).

ownership of a valid copyright" and (2) a violation of "any of the copyright owner's five exclusive rights" under 17 U.S.C. § 106. *Arista Records, LLC v. Doe 3* ("*Doe 3*"), 604 F.3d 110, 117 (2d Cir. 2010) (listing copyright owner's exclusive rights to "reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, [the] copyrighted work"); *Capitol Records, LLC, d/b/a EMI Music North Am. v. Escape Media Grp., Inc. ("EMI")*, No. 12-CV-6646 (AJN), 2015 WL 1402049, at *38 (S.D.N.Y. Mar. 25, 2015); *UMG Recording, Inc. v. Escape Media Grp., Inc. ("Escape Media")*, No. 11 Civ. 8407, 2014 WL 5089743, at *19 (S.D.N.Y. Sept. 29, 2014). Plaintiffs have demonstrated both elements here.

The well-pleaded allegations in the Complaint, deemed admitted on Defendants' default, establish Defendants' direct copyright infringement. Plaintiffs are the owners or exclusive licensees of copyrights in the Works listed in Exhibit A to the Complaint, Compl. ¶ 15; *id.*, Ex. A; and Defendants have infringed Plaintiffs' exclusive rights through the unauthorized reproduction, distribution, public performance, and public display of Plaintiffs' Works, Compl. ¶¶ 28-34.

Even beyond the allegations in the Complaint, Plaintiffs have provided conclusive evidence of Plaintiffs' ownership or exclusive licensee status;[4] of Defendants' lack of authorization to reproduce, distribute, display, or publicly perform any of Plaintiffs' Works;[5] that Defendants have uploaded unauthorized copies of Plaintiffs' Works to servers that are used to publicly perform, distribute, and display these Works to users of the PubFilm Websites; and that Defendants allow users to download copies of Plaintiffs' Works directly to their computers.

---

[4] Declaration of David Phillip Kaplan ("Kaplan Decl.") ¶¶ 6-7, Dkt. No. 25; Declaration of Daniel Kim ("Kim Decl.") ¶ 5, Dkt. No. 27; Declaration of Michael Stanton ("Stanton Decl.") ¶¶ 5-6, Dkt. No. 28; Declaration of Steve Kang ("Kang Decl.") ¶¶ 5-6, Dkt. No. 29; Declaration of Marsha L. Reed ("Reed Decl.") ¶¶ 5-6, Dkt. No. 30; Declaration of Gabriel D. Miller ("Miller Decl.") ¶¶ 5-6, Dkt. No. 31; Declaration of Deborah Robinson ("Robinson Decl.") ¶¶ 7-9, Dkt. No. 32.
[5] Kaplan Decl. ¶ 15; Kim Decl. ¶ 13; Stanton Decl. ¶ 14; Kang Decl. ¶ 14; Reed Decl. ¶ 11; Miller Decl. ¶ 12; Robinson Decl. ¶ 14.

Brasich TRO Decl. ¶¶ 6-10, 13.

These actions constitute direct copyright infringement.  Uploading of copyrighted works without authorization and permitting of unauthorized downloads constitutes direct infringement of Plaintiffs' exclusive rights of reproduction and distribution.  *See, e.g.*, *Escape Media*, 2014 WL 5089743, at *20-21, *23, *26 (concluding that defendants were liable for direct infringement because they "uploaded copies" of copyrighted works); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts."); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648-51 (S.D.N.Y. 2013) (finding direct infringement where defendant website offered copyrighted sound recordings for download); *see also Arista Records LLC v. Usenet.com, Inc. ("Usenet")*, 633 F. Supp. 2d 124, 147 (S.D.N.Y. 2009) ("[D]elivery of articles and/or content to download at the request of subscribers can be the basis of direct infringement of the distribution right.").  Additionally, Defendants' unauthorized streaming of Plaintiffs' Works to users of the PubFilm Websites constitutes direct infringement of Plaintiffs' exclusive public performance rights.  *See, e.g., Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2507, 2510 (2014).  Plaintiffs are thus entitled to a default judgment as to their claims for copyright infringement.

### B.    Defendants Are Liable for Secondary Copyright Infringement.

Plaintiffs also have established that Defendants are secondarily liable for the copyright infringement of users of the PubFilm Websites under the theories of vicarious liability, inducement of infringement, and contributory liability.  *See MGM Studios Inc. v. Grokster, Ltd.* ("*Grokster*"), 545 U.S. 913, 930, 934-36 (2005) (recognizing separate doctrines of secondary liability).

*First,* Defendants are vicariously liable for copyright infringement when they "profit from direct infringement while declining to exercise a right to stop or limit it."  *Grokster*, 545 U.S. at

14

930; *EMI*, 2015 WL 1402049, at *41-43; *Arista Records LLC v. Lime Grp. LLC* ("*LimeWire*"), 784 F. Supp. 2d 398, 423 (S.D.N.Y. 2011).  A plaintiff must show "a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Usenet*, 633 F. Supp. 2d at 157.  Such a relationship is established when the infringing material acts as a "draw" to attract users.  *Usenet*, 633 F. Supp. 2d at 156-57.

The admitted allegations of the Complaint establish these elements, as Defendants provide users with access to Plaintiffs' Works.  *See* Compl. ¶¶ 29-34.  The relationship between the infringing activity and Defendants' profits is clear, as infringing content is a substantial (and evidently the only) draw to the PubFilm Websites.  The PubFilm Websites prominently display some of the latest and most popular motion pictures and television shows still in current first-run release on offer for streaming and download by users.  *Id.* ¶¶ 2, 31; *see also* Brasich TRO Decl. ¶¶ 6, 10.  Defendants drive visitor traffic to the PubFilm Websites and thereby gain revenue from advertisements placed on the PubFilm Websites by promoting the free availability of Plaintiffs' Works and other popular works.  *See* Compl. ¶ 35 (alleging that the metadata used for marketing through Internet search engines include the terms "Watch movie and TV Show PubFilm HD Free" and "watch movies online free full hd"); *see also* Brasich TRO Decl. ¶ 18 (illustrating that Defendants drive traffic to the PubFilm Websites by promoting the infringing content on their Facebook account).  There is a clear causal relationship between the infringing behavior and Defendants' profits.  *See EMI*, 2015 WL 1402049, at *42-43; *LimeWire*, 784 F. Supp. 2d at 435.

*Second,* a defendant is liable for inducement if he or she "(1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement." *LimeWire*, 784 F. Supp. 2d at 425; *Usenet*, 633 F. Supp. 2d at 150-52 (same).  As the Complaint

establishes, Defendants operate and promote the PubFilm Websites with the object of encouraging the infringement of copyrights in popular movie and television content, including Plaintiffs' Works.  Compl. ¶¶ 1-2, 29-32, 35.  Not only do Defendants offer users popular and obviously copyrighted film and television content for streaming on demand, but they also prominently encourage users, through Defendants' built-in video player, to download unauthorized copies of those Works.  *Id.* ¶¶ 1-2, 29-32.

*Third,* it is well settled that "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer."  *Arista Records, LLC v. Doe 3*, 604 F.3d at 117 (internal quotation marks and citation omitted); *see EMI*, 2015 WL 1402049, at *43.  Defendants have actual and constructive knowledge of the infringement that occurs through the PubFilm Websites.  Indeed, Defendants identify and curate these infringing works by the particular piracy method by which each unauthorized copy was made, such as "Cam," "WebRip" or "HDRip."  Compl. ¶¶ 2, 33.  Their promotion of the PubFilm Websites includes the use of references to notorious websites that have been the subject of criminal prosecution, such as "kickass.to" and "thepiratebay.se," further demonstrating awareness of infringement and piracy.  *Id.* ¶ 35.  Moreover, Defendants materially contribute to users' infringement by providing the very means by which infringing copies of Plaintiffs' Works are reproduced, distributed, performed and displayed.  *Id.* ¶¶ 29-30, 32, 34; *see Perfect 10*, 508 F.3d at 1172 (holding that "assist[ing] a worldwide audience of users to access infringing materials" constitutes material contribution); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1163 (2d Cir. 1971) ("[Defendant's] pervasive participation in the formation and direction of [platform that performed the infringing works] amply support[s] the district court's finding that it 'caused this copyright infringement.'").  This secondary liability

16

provides an independent basis for a default judgment on Plaintiffs' claims of copyright infringement.

### III.    Defendants Are Liable for Trademark Infringement and Unfair Competition and False Designation of Origin.

Plaintiffs are also entitled to default judgment on their claims for trademark infringement and for unfair competition and false designation of origin.  To establish liability for trademark infringement, Plaintiffs must show that: (1) the marks at issue are entitled to protection; (2) Defendants do not have consent to use the marks; (3) Defendants use the marks to distribute or advertise copies of Plaintiffs' Works; and (4) Defendants' use of the marks is likely to cause confusion.  *See* 15 U.S.C. § 1114(1); *Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999).  Each of these elements is met here.

Plaintiffs' Marks are clearly entitled to protection.  As pled in the Complaint, Plaintiffs are the owners of the rights, title, and interest in and to their respective, registered Marks in connection with the distribution of copies of Plaintiffs' Works, unauthorized copies of which Defendants are distributing using Plaintiffs' Marks.  Compl. ¶ 16; *id.*, Ex. B.[6]  Plaintiffs have also shown that (i) Defendants' use of Plaintiffs' Marks is not authorized by Plaintiffs, and (ii) the unauthorized copies of Plaintiffs' Works that Defendants are offering bear marks that are identical to or substantially indistinguishable from Plaintiffs' federally registered marks, which Plaintiffs are using in commerce.  *Id.* ¶¶ 31-33, 57-58; *see also* Brasich TRO Decl. ¶¶ 8-9; Doroshow TRO Decl. ¶ 7.[7] Finally, the Complaint establishes that Defendants' use of the marks is likely to cause confusion, as courts in this District have determined that "where [identical] marks are involved, it is not

---

[6] *See also* Kaplan Decl. ¶ 8; Kim Decl. ¶ 6; Stanton Decl. ¶ 7; Kang Decl. ¶ 7; Reed Decl. ¶ 7; Miller Decl. ¶ 7; Robinson Decl. ¶ 10.
[7] *See also* Kaplan Decl. ¶ 15; Kim Decl. ¶ 13; Stanton Decl. ¶ 14; Kang Decl. ¶ 14; Reed Decl. ¶ 11; Miller Decl. ¶ 12; Robinson Decl. ¶ 15.

necessary to perform the step-by-step examination of each *Polaroid* factor" to find likelihood of confusion because such marks "are inherently confusing." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005) (internal quotation marks and citation omitted); *see also Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010).

Moreover, courts throughout the Second Circuit have found infringement where defendants have used the plaintiffs' trademarks to distribute unauthorized goods, in part because the plaintiffs are unable to control the quality of those goods. As the Second Circuit opined, "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods [distributed] under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986); *see also Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (holding that defendant infringed Shell trademark by marketing bulk authentic Shell oil according to its own and not Shell's quality control standards); *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 75 (2d Cir. 1987) (Cardamone, J., concurring) (concluding that territorial restriction preventing United States sale of Cabbage Patch dolls with Spanish-language instructions is quality control measure, and opining that sale of dolls in United States therefore infringes trademark).

As pled in the Complaint, Defendants here have used Plaintiffs' Marks to distribute unauthorized goods—specifically, unauthorized copies of Plaintiffs' Works. Compl. ¶¶ 31-33. This is notwithstanding Plaintiffs' right to control the quality of their Works, including when and in what manner the works are distributed. *Id.* ¶¶ 14-16. Furthermore, Plaintiffs have provided evidence that Defendants distribute infringing copies of Plaintiffs' Works without regard to Plaintiffs' quality controls: Users of the PubFilm Websites frequently complain about the quality

of Plaintiffs' Works on Defendants' sites, such as "this copy doesn't have the entire picture" or "I'm seeing people move around and it's not in the movie.  It's people in the theater that are getting in the way."  Brasich TRO Decl. ¶ 11.  Defendants even caution their users that a given copy of Plaintiffs' Works on the PubFilm websites is not of "high quality," but that "temporarily it is the best version out there."  *Id.*  Accordingly, a default judgment is warranted as to Plaintiffs' claims for trademark infringement and unfair competition and false designation of origin.[8]

### IV.     Plaintiffs Are Entitled to a Maximum Award of Statutory Damages for Copyright Infringement.

Section 504(c) of the Copyright Act allows a plaintiff to elect to recover statutory damages "instead of actual damages and profits."  17 U.S.C. § 504(c)(1).  While statutory damages generally range from $750 to $30,000 per work, the ceiling for individual awards is extended to $150,000 per work infringed in cases where the infringement was willful.  *See id.* § 504(c)(1) & (2).  As set forth herein, Defendants' egregious infringement and conduct in this case warrants a statutory maximum of $150,000 per work infringed.

The Court may infer that Defendants willfully infringed Plaintiffs' copyrights simply on the basis of Defendants' default.  *See Van Der Zee v. Greenidge*, No. 03 Civ. 8659 (RLE), 2006 WL 44020, at *3 (S.D.N.Y. Jan. 6, 2006) (drawing inference of willful copyright infringement by virtue of a defendant's default and awarding enhanced statutory damages); *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (drawing inference of willfulness from defendant's failure to appear "especially in light of plaintiff's allegation of willfulness and demand for 'increased statutory damages applicable to willful infringers'"); *see also Chloe v. Zarafshan*,

---

[8] As Plaintiffs have established their claim for trademark infringement, they necessarily have also demonstrated that Defendants are liable on their claim of false designation of origin and unfair competition, which also requires a showing of a valid, protectable mark and a likelihood of confusion.  *See Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014).

No. 1:06-cv-3140-RJH-MHD, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself.").

However, even without such an inference, Plaintiffs' well-pleaded allegations readily establish that Defendants' acts of copyright infringement were willful.  As alleged in the Complaint, Defendants note prominently on the PubFilm Websites whether each copy of a work is a "Cam" (a copy illegally recorded in a movie theater), "HDRip" (a copy illegally ripped from a protected high-definition source), or "WebRip" (a copy illegally made from a streamed version online).  Compl. ¶ 33.  In fact, in their marketing, Defendants invite users expressly to "Watch movie and TV Show PubFilm HD Free" and "watch movies online free full hd" and reference other notorious piracy websites such as "thepiratebay.se." *Id.* ¶ 35.  Furthermore, Defendants have continued to engage in their infringing conduct even after receiving notice of the TRO and this Court's subsequent Orders.  *See generally* Supp. Brasich Decl.; Second Supp. Brasich Decl.; Doroshow Default Decl. ¶¶ 6, 10, 17.

Courts in this and other Circuits have routinely held that such willful misconduct justifies a large award per work infringed, including awards of the statutory maximum.  *See Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999) (upholding maximum award for willful infringement); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (same); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 479-80 (S.D.N.Y. 2001) (awarding maximum for willful infringement for certain periods of infringement); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862-63 (S.D.N.Y. 1984) (awarding maximum for willful infringement); *Entral Grp. Int'l v. Sun Sports Bar Inc.*, No. 05-

20

cv-4836 (CBA), 2007 WL 2891419, at *5-6 (E.D.N.Y. Sept. 28, 2007) (same); *Warner Bros. Entm't v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (same).

Given the egregious circumstances of this case, Plaintiffs should be awarded the full amount of statutory damages of $150,000 for each of the 132 Works identified in the Complaint, for a total of $19,800,000.[9]

## V.    Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs.

Section 505 of the Copyright Act specifically authorizes the court to "allow the recovery of full costs by or against any party" and "also [to] award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  Although such fees are awarded in the court's discretion, "they are the rule rather than the exception and *should be awarded routinely*."  *Kroll-O'Gara Co. v. First Def. Int'l, Inc.*, No. 99 Civ. 4899 (SAS), 2000 WL 369721, at *1 (S.D.N.Y. Apr. 11, 2000) (emphasis added); *RC Entm't, Inc. v. Rodriguez*, No. 98 Civ. 8585 (BSJ), 1999 WL 777903, at *3 (S.D.N.Y. Sept. 29, 1999); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 836 (S.D.N.Y. 1991); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008); *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 411 (5th Cir. 2004).  In cases of willful infringement, an award of attorneys' fees and costs under Section 505 is "justified" and "in line with the statutory goal of deterrence."  *Kepner-Tregoe, Inc.*, 186 F.3d at 289; *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 634 (S.D.N.Y. 2011); *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6189 (JFK), 2008 WL

---

[9]  A hearing regarding damages is not required here as the uncontested evidence contained in the multiple declarations filed in this action readily establishes the bases for the statutory damage awards specified in the proposed default judgment.  *See, e.g.*, *Manno v. Tenn. Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 431 (S.D.N.Y. 2009) (conducting inquiry into damages based on parties' written submissions and finding defendant's conduct demonstrated willfulness in determining statutory damages); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003) (awarding statutory damages based on plaintiffs' written submissions).  *See also* Doroshow Default Decl. ¶ 25.

3906889, at *17 (S.D.N.Y. Aug. 21, 2008).[10]

For the reasons already shown, and in light of Defendants' default and willful conduct, Plaintiffs are the prevailing parties here.   Accordingly, Plaintiffs should be awarded their reasonable attorneys' fees and costs in an amount to be proven in a forthcoming submission.  *See* Doroshow Default Decl. ¶ 26.

## VI.   Plaintiffs Are Entitled to a Permanent Injunction.

### A.   The Court Has the Authority To Issue a Permanent Injunction.

A court may "issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Hounddog Prods.*, 826 F. Supp. 2d at 632 (internal citations and quotation marks omitted).

Section 502(a) of the Copyright Act authorizes the Court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *see also Hounddog Prods.*, 826 F. Supp. 2d at 632-33 (granting permanent injunction on a motion for default judgment).  Additionally, under Section 34 of the Lanham Act, a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. § 1116(a).

### B.   Plaintiffs Meet the Requirements for Injunctive Relief.

A plaintiff seeking to obtain a permanent injunction must establish: "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

---

[10] The Lanham Act similarly authorizes the court in exceptional circumstances—which include findings of willfulness—to "award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a); *see also Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (affirming grant of attorneys' fees and default judgment against trademark infringer, noting that "'[e]xceptional circumstances' include willful infringement").

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  All of these elements are readily satisfied here.

*First*, Plaintiffs have demonstrated that they have suffered irreparable injury resulting from Defendants' operation of the PubFilm Websites.  "A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright(s)." *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08-cv-7497, 2014 WL 1883474, at *11 (S.D.N.Y. May 9, 2014).  The injuries to Plaintiffs' businesses that are threatened here are quintessentially irreparable.  It is well established that unlicensed services such as Defendants' "'undermine[] [the major motion picture studios'] negotiating position . . . and also damage[] goodwill with licensees,' because [they] offer[] the Studios' works during negotiated 'exclusivity periods.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865-66 (9th Cir. 2017) (affirming district court's finding of irreparable injury caused by unlicensed streaming service) (emphasis added); *see also, e.g., WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285-86 (2d Cir. 2012) (holding that "streaming copyrighted works without permission," including at times "earlier . . . than scheduled by the programs' copyright holders or paying" licensees was likely to cause irreparable harm to copyright owners' "negotiating platform and business model"); *China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM (MRWx), 2015 WL 3469187, at *13 (C.D. Cal. June 11, 2015) (concluding that infringing video streaming service caused irreparable harm because it "interfered with plaintiff's ability to develop a lawful market for internet distribution"); TRO Mem. at 27-28; Declaration of Tedd Cittadine ¶¶ 9-10, 13, 15-16, 23 (explaining how the

23

PubFilm Websites interfere with Plaintiffs' licensed exclusive windows with authorized distributors), Dkt. No. 26; Reed Decl. ¶ 12; Brasich TRO Decl. ¶ 7.  Furthermore, Defendants' operation of the PubFilm Websites harms Plaintiffs' relationships and goodwill with authorized distributors by undermining those distributors' ability to provide licensed offerings.  *See VidAngel*, 869 F.3d at 865-66; *Complex Sys.*, 2014 WL 1883474, at *12 ("A loss of goodwill or reputation . . . may constitute irreparable harm."); TRO Mem. at 27-28.

It is also well settled that "a particularly strong likelihood of confusion should weigh in favor of finding irreparable injury."  *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011).  This is because where there is a strong likelihood of confusion, "the reputation and goodwill cultivated by [the trademark owner] would be out of its hands," especially where the infringer's "product may or may not be of high quality, sold with sufficient care to customer service, or convey the same branding image."  *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011).  Plaintiffs have demonstrated a "particularly strong likelihood of confusion" because, as explained above, the use of an identical mark is "inherently confusing."  *Lorillard*, 378 F. Supp. 2d at 455; *see also Fendi Adele S.R.L.,* 696 F. Supp. 2d at 383.  Moreover, Plaintiffs have demonstrated that Defendants' unauthorized distribution of Plaintiffs' Works—through the use of Plaintiffs' Marks—is accomplished without regard to the quality of those Works, thus undermining Plaintiffs' reputation and goodwill.  *See supra* pages 18-19; *see also* Brasich TRO Decl. ¶ 11.

*Second,* while an award of statutory damages against Defendants is warranted, damages alone cannot protect Plaintiffs against future infringements by Defendants—only an injunction can do so.  *See Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (finding money damages alone to be inadequate remedy given irreparable harm from continued

infringement).  Indeed, an award of damages alone would likely be ineffective in preventing further infringement as Defendants have refused to appear in the case and they operate outside the United States.  *See NML Capital, Ltd. v. Republic of Arg.*, 699 F.3d 246, 262 (2d Cir. 2012) (noting that "damages are an ineffective remedy" because defendant "will simply refuse to pay any judgment"); *Lava Records LLC v. Ates*, No. Civ.A. 05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (stating that harm from infringement is not remedied "by a damage award that may or may not be collectible"); *see also* Doroshow Default Decl. ¶¶ 6-7, 13, 15, 18, 27; Doroshow TRO Decl. ¶ 5.

*Third*, the balance of hardships plainly favors Plaintiffs.  As the Court found when granting the TRO, the harm Plaintiffs would suffer in the absence of an injunction clearly outweighs any harm to Defendants' legitimate interests from granting such an order.  *See* TRO ¶ 9.  Moreover, Defendants appear to have no legitimate business activities that would be harmed by an injunction—their infringing activities are the entirety of their business.  Doroshow Default Decl. ¶ 27; *see WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[A]n infringer of copyright cannot complain about the loss of ability to offer its infringing product.").

*Fourth,* the public interest supports Plaintiffs' request.  "[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" those works.  *ivi*, 691 F.3d at 287 (affirming grant of preliminary injunction in copyright case).  A permanent injunction would also serve the strong public interest in not being misled as to the origin, source, or sponsorship of trademarked goods and services.  *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976).[11]

---

[11] Plaintiffs' proposed permanent injunction comports with Rule 65(d) of the Federal Rules of Civil Procedure.  The proposed injunction "state[s] the reasons why it issued," "state[s] its terms specifically," and "describe[s] in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."  Fed. R. Civ. P. 65(d).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a Default Judgment and Permanent Injunction against Defendants in the form of the [Proposed] Default Judgment and Permanent Injunction Order, submitted herewith.

DATED: Washington, D.C.
        January 17, 2018

Respectfully submitted,

JENNER & BLOCK LLP

By: _____ s / Kenneth L. Doroshow _____
     Kenneth L. Doroshow (KD-8374)
     1099 New York Ave., N.W.
     Suite 900
     Washington, DC 20001
     Telephone:  (202) 639-6027
     Facsimile:  (202) 661-4855

     Lori B. Day (LD-1197)
     919 Third Avenue
     37th Floor
     New York, NY 10022
     Telephone:  (212) 407-1772
     Facsimile:  (212) 891-1699

     MOTION PICTURE ASSOCIATION OF
     AMERICA, INC.
     Karen R. Thorland (*Pro Hac Vice*)
     karen_thorland@mpaa.org
     15301 Ventura Blvd.
     Building E
     Sherman Oaks, CA 91403
     Telephone:  (818) 935-5812

     Attorneys for Plaintiffs

26